In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance, Respondent, for an Order to Take Possession of the Property of BOND AND MORTGAGE GUARANTEE COMPANY, Respondent.

CITY BANK FARMERS TRUST COMPANY, Appellant.

(Argued April 22, 1935; decided May 21, 1935.)

*Edwin W. Cooney* and *Edward L. Hunt, Jr.*, for appellant.

*Louis M. Fribourg* and *Albert W. Fribourg* for Herbert E. Merseles et al., as executors of Theodore F. Merseles, deceased, *amici curiæ.*

*John F. Caskey* and *James B. McDonough, Jr.*, for respondents.

LOUGHRAN, J. In this controversy, submitted to the Appellate Division upon an agreed statement of facts, the parties are City Bank Farmers Trust Company (called the Bank), and the Superintendent of Insurance, as rehabilitator of Bond and Mortgage Guarantee Company (called the Guarantee Company).

On May 25, 1931, the Bank became owner of a bond and mortgage to secure the payment on May 14, 1934, of $5,000, with interest at six per cent to be paid on November 1, 1931, and semi-annually thereafter. Thereupon the Guarantee Company delivered to the Bank a " guarantee policy " covering the bond and mortgage, whereby the Guarantee Company guaranteed to the Bank: " *First.* Payment at the rate of five and one-half per cent per annum, from May 25th, 1931, out of every installment of interest falling due on the bond and mortgage * * *, within five days after same has become due; *Second.* Payment of the principal * * * as soon as collected, but in no event later than eighteen months after it shall have become due and payment thereof shall have been demanded in writing by the insured [the Bank], with regular payment meantime of interest at the rate guaranteed." The policy also provided: " By the acceptance of this guarantee this [Guarantee] Company is made irrevocably the agent of the insured [the Bank], until the bond and mortgage be paid, with the exclusive right, but

at its own expense, * * * to collect the interest as it falls due on the bond and mortgage hereby guaranteed. Out of the interest so collected this [Guarantee] Company is authorized to retain as its premium for this guarantee the excess [one-half of one per cent] over the guaranteed rate named above."

Appended to the policy are two classes of conditions. (A) " This [Guarantee] Company is bound: * * * 2. To continue this guarantee on the extension of the mortgage on payment of the same premium per annum as is charged for this guarantee, unless this [Guarantee] Company shall elect to collect said mortgage." (B) " The insured [the Bank] is bound: 1. To permit this [Guarantee] Company to collect all interest and the principal secured by said bond and mortgage, and to refrain from collecting any part of the interest or principal secured by said bond and mortgage except through this [Guarantee] Company. * * * 4. To allow this [Guarantee] Company, in the name of the insured [the Bank], to exercise any right or option secured to the insured [the Bank] by said bond or mortgage, and to refrain from exercising any such right without the consent of this [Guarantee] Company. Without further action on the part of the insured [the Bank], this [Guarantee] Company is authorized to enforce payment in the name of the insured [the Bank], from time to time, of any sums which may be or become due under said bond and mortgage * * * 5. To assign said bond and mortgage to this [Guarantee] Company, if requested so to do, upon receipt from it [the Guarantee Company] of the amount due the insured [the Bank], whenever the insured is entitled to require payment of the amount secured."

In a proceeding under article XI of the Insurance Law (Cons. Laws, ch. 28), the Supreme Court, on August 2, 1933, made an order under which the Superintendent of Insurance is administering the business and property of the Guarantee Company as its rehabilitator.

The bond and mortgage matured on May 14, 1934. The principal is unpaid. Payment thereof by the Guarantee Company has not been demanded by the Bank. Interest to May 1, 1934, has been paid by the mortgagor to the Guarantee Company and (less the policy premium) by that company to the Bank. There are no arrears of taxes on the mortgaged premises.

The question in difference is stated as follows:

" The Bank claims that it is entitled to terminate its agreement with the Guarantee Company upon the maturity of the mortgage, provided the Bank * * * makes no demand for performance of the obligations of the Guarantee Company with respect to payment of principal. The Bank admits that the Guarantee Company has duly performed all of the other obligations of its contract, and is prepared to deliver an appropriate release and discharge to the Guarantee Company as evidence of such admission and of the fact that no demand will be made for performance of the obligations of the contract with respect to payment of principal.

" The Guarantee Company and its rehabilitator claim that the right to act as the Bank's agent and to exclusively control and service this bond and mortgage is an agency coupled with an interest not revocable except for default and is an asset of value which the rehabilitator is under a duty to preserve for the creditors of the Guarantee Company."

The Appellate Division has directed judgment for the Guarantee Company and its rehabilitator. We think the Bank is entitled to judgment.

The Guarantee Company has here no power coupled with an interest. (*Farmers' Loan & Trust Co.* v. *Wilson*, 139 N. Y. 284; American Law Institute, Restatement of The Law of Agency, § 138.) Nor do the stipulations making the Guarantee Company " irrevocably the agent " of the Bank, with the " exclusive right " to collect interest on the bond and mortgage, amount to more than an agree-

ment to continue that agency for the life of the policy. The real issue is whether, consistently with that agreement, the Bank may now terminate the authority of the Guarantee Company upon discharging it from further liability.

The rehabilitator stands upon a strict construction of particular terms of the policy, but it is obvious that the policy was never intended to answer the question here presented. It was contemplated by the policy that the mortgage would be collected at maturity. It was intended that the Guarantee Company could then insist on immediate collection. If the Guarantee Company did not so insist, the purpose was " to continue this guarantee " during an extension of the mortgage. How has the contemplated state of things fallen out? The mortgage is now due, but the mortgagor has by law been made independent of both the Bank and the Guarantee Company so far as the time of payment of principal is concerned (Civ. Prac. Act, §§ 1077-a–1077-f), a status unthought of when the policy was issued. The Guarantee Company is by law in the hands of the rehabilitator under a judicial decree which declares that it is " unable to meet the present and early future demands upon it for fulfillment of its obligations as they mature " and that its " affairs * * * are in such condition that its further transaction of business will be hazardous to its policy holders "— another contingency not suggested when the policy was delivered. It is a mere fiction to say that the parties actually intended anything in so unforeseen an emergency.

While courts " neither make nor modify contracts nor dispense with their performance " (*Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377, 381, 382), it is no longer true that the scope of an undertaking is necessarily to be fixed in absolute accordance with the literal meaning of the language used. (3 Williston on Contracts, § 1931; *Buffalo & Lancaster Land Co.* v. *Bellevue Land*

*& Improvement Co.,* 165 N. Y. 247; *Day* v. *United States,* 245 U. S. 159.) Further performance of the form of this policy is still possible, but that is not the test of the right of the Bank. The basis on which the policy was entered into has been removed, and the value of the guarantee impaired, by the force of uncontrollable supervening events. What would a reasonable and fair-minded business man in the place of the Guarantee Company be entitled to expect in the situation in which the parties now find themselves without fault of either? (See *Stewart* v. *Stone,* 127 N. Y. 500; *Buffalo & Lancaster Land Co.* v. *Bellevue Land & Improvement Co., supra;* 15 Harv. L. Rev. 63, 64; *The Kronprinzessin Cecilie,* 244 U. S. 12; 3 Williston on Contracts, §§ 1935, 1937.) It seems plain to us that the substantial injustice of the present one-sided result dictates the answer that the Bank should be absolved when the Guarantee Company is released.

The judgment of the Appellate Division should be reversed and judgment directed for the petitioner City Bank Farmers Trust Company as asked for in the submission, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur; FINCH, J., not sitting.

Judgment accordingly.