In the Matter of the Liquidation of NEW YORK TITLE AND MORT-
GAGE COMPANY.
ARTHUR J. MORGAN, Petitioner
(520–528 Eighth Avenue.)

Supreme Court, Additional Special Term, New York County, June 3, 1936.

*Abraham  N.  Geller* [*Abraham  N.  Geller* and *Leonard  Furtkin* **of** counsel], for the petitioner, Arthur J. Morgan.

*Benjamin  J.  Rabin* [*Maurice  Finkelstein* and *John  J.  Clark* **of** counsel], for the Mortgage Commission of the State of New York.

*William A. Shea* [*Harry Rodwin* and *Irving H. Jurow* of counsel] for the Superintendent of Insurance, as liquidator of the New York Title and Mortgage Company.

FRANKENTHALER, J.   This is an application, on behalf of the holders of series N-60 mortgage certificates, issued and guaranteed by the New York Title and Mortgage Company, to compel the Superintendent of Insurance, as liquidator of that company, to pay over to the certificate holders certain sums which, it is claimed, are improperly withheld from them.

The N-60 certificates represent participating interests in a consolidated bond and mortgage assigned by the original mortgagee to the New York Title and Mortgage Company.   The principal is payable in quarterly installments of $14,500 each until February 1, 1937, when the unpaid balance of principal becomes due.   The certificates contain the title company's guaranty that interest will be paid to the holders at the rate of five and one-half per cent per annum and that the principal will be paid " as and when collected out of the installment becoming due on the date above noted, but in any event within eighteen months after payment shall be demanded by the assured, provided such demand be made after said principal sum, or the installment thereof out of which " the certificates are payable " shall have become due under the terms of said bond and mortgage."   There is also an express provision in each certificate that " any excess of interest collected by the Company on said bond and mortgage beyond the rate above mentioned in this certificate ($5\frac{1}{2}\%$) shall belong to the Company."

For the purposes of this motion the petitioner concedes that the certificate holders have received interest at the rate of five and one-half per cent per annum and that there are no arrears of interest or taxes.   The owner of the mortgaged property has been paying interest at the rate of six per cent per annum in accordance with the terms of the bond and mortgage.   The difference of one-half of one per cent per annum has been retained by the Superintendent of Insurance and by the Mortgage Commission, his successor.   The only default under the bond and mortgage consists of the owner's failure to make the amortization payments due on May 1, 1933, and every three months thereafter.   Including the payment due on November 1, 1935, the total amount in default was $159,500.

From August 4, 1933, the date of the order directing the rehabilitation of the title company, to November 1, 1935, the following payments for " servicing fees " were made out of the differential of one-half of one per cent per annum:

(1) To the rehabilitator, for the period from August 4, 1933, to August 1, 1934, at the rate of five-sixteenths per cent per annum............................... $8,782 58

(2) To the Servicing Corporation of New York, from August 1, 1934, to May 15, 1935, at the rate of one-third per cent per annum..................... 7,499 75

(3) To the Servicing Corporation of New York, from May 15, 1935, to November 1, 1935, at the rate of three-eighths per cent per annum................ 4,884 72

$21,167 05

In addition some minor payments aggregating $95.52 were made for miscellaneous purposes, bringing the total of the payments up to $21,262.57. During this period the differential of one-half of one per cent per annum amounted to $31,814.61, which is $10,552.04 in excess of the payments for servicing fees, etc.

The principal question presented on this application is whether this $10,552.04 properly belongs to the Superintendent of Insurance as liquidator of the title company or to the certificate holders. Although the certificates expressly authorize the title company to retain any excess of interest collected by it beyond the five and one-half per cent per annum which it guaranteed to the certificate holders, it is important to bear in mind that part of the consideration for the premium of one-half of one per cent per annum consists of the company's guaranty that the *principal* of the mortgage will be paid. If the company, throughout the period in question, had failed to comply with its guaranty as to payments of principal it would clearly be unjust and inequitable to permit the Superintendent of Insurance, as its liquidator, to retain the difference between the one-half of one per cent per annum and the " reasonable * * * costs and expenses " of servicing authorized by the Schackno Act. It would be equally unfair to allow the Superintendent of Insurance to obtain from the Mortgage Commission the difference between the one-half of one per cent per annum collected by it and the servicing costs authorized by the Mortgage Commission Act.

The Superintendent of Insurance maintains, however, that until (1) a demand for payment by the certificate holders of any installment of principal due under the terms of the bond and mortgage, and (2) the expiration of eighteen months from the making of such demand, the company cannot be held to be in default as to principal payments. On this theory the company on November 1, 1935, was in default only as to a single certificate of the face amount

of $1,000. In the view this court takes of the situation, however, the circumstance that the company was not *technically* in default upon its guaranty of principal as to any of the remaining certificates is immaterial. The fact is that amortization payments totalling $159,500 due under the bond and mortgage had not been paid by the owner of the property or by the company. The owner was in default. It was inevitable that at the end of the eighteen months' period of grace the company would likewise be in default, for throughout the period in question it was, first in rehabilitation, and later in liquidation, and no payments of principal could or would be made upon its guaranty except out of principal collected from the mortgagor. As to the necessity for making demands of payment, the company's legal status rendered such demands futile and, therefore, obviated the making of any demands. It would be unconscionable to permit the company to receive the full premium of one-half of one per cent per annum for a period during which substantial amounts of principal maturing under the bond and mortgage were not paid, for the company's status was such that its default upon its guaranty of these unpaid installments was certain to occur at the expiration of the eighteen months. The situation here is somewhat analogous to that obtaining in *Matter of People* (*Bond & Mort. Guar. Co.*) (267 N. Y. 419). In that case the owner of a bond and mortgage, guaranteed by the Bond and Mortgage Guarantee Company, was permitted to terminate the exclusive agency conferred upon the latter by the policy of guaranty although there were no arrears of interest or taxes. The principal, it is true, had not been paid at maturity, but the company was not in default upon its guaranty since the eighteen months' period of grace provided for in its policy had not run and no demand for payment had been made upon the company. Nevertheless, the Court of Appeals held that the rehabilitation proceedings instituted against the latter had removed the basis upon which the policy was entered into and had impaired the value of the guaranty (p. 426): " Further performance of the form of this policy is still possible, but that is not the test of the right of the Bank. The basis on which the policy was entered into has been removed, and the value of the guarantee impaired, by the force of uncontrollable supervening events." The court declared that (p. 425) " it is no longer true that the scope of an undertaking is necessarily to be fixed in absolute accordance with the literal meaning of the language used," and based its decision upon the answer to the following question: " What would a reasonable and fair-minded business man in the place of the Guarantee Company be entitled to expect in the situation in which the parties now find themselves without

fault of either? " Applying this test to the instant case, it appears to be obvious that no reasonable and fair-minded business man in the place of the guaranty company was entitled to expect that he could retain for himself the premium or consideration for his guaranty at a time when it was definitely established that he would be unable to perform the guaranty *in respect to then existing defaults by the mortgagor.*

As to the contention that the emergency moratorium statutes extend the time of payment of the principal and of guaranties thereof, as long as no default exists in respect of interest and taxes, it is only necessary to refer to this court's opinion in *Matter of N. Y. Title & Mortgage Co.* (154 Misc. 586). The question there was whether the moratorium laws prevented the owner of a mortgage from terminating the exclusive agency conferred upon the guaranty company. The court held that they did *not*, pointing out (at p. 589) that although " no action may successfully be maintained against the guarantor to enforce its guaranty of the principal," it " does not follow, however, that the guarantor may retain possession of the valuable, exclusive agency conferred upon it by the petitioner and at the same time fail or refuse to pay the most substantial portion of the consideration which it promised to the petitioner in return for the exclusive agency." The court also employed the following pertinent language (at p. 590): " While the agency continues the guarantor is deducting from the interest of six per cent per annum one-half of one per cent for its services and remitting to the petitioner only the balance of five and one-half per cent per annum. If this condition is allowed to persist the result will be that the guarantor will continue to retain the valuable agency and a fee of one-half of one per cent per annum of the principal amount of the mortgage although, as a practical matter, the guarantor will probably never comply with its guaranty, it being almost certain that its liquidation of the guarantor is imminent."

There appears to be no more valid reason for holding that the guaranty company may retain the full premium without furnishing the stipulated consideration than there is for permitting the company to retain the exclusive agency without performing the guaranty. The court accordingly holds that the Superintendent of Insurance has no valid claim to the $10,552.04 and that this fund should be paid to the certificate holders of series N-60.

A similar question is presented as to the right of the guaranty company to receive the full premium at the rate of one-half of one per cent per annum for the period immediately preceding the order of rehabilitation, viz., May 1, 1933, to August 4, 1933. This

premium amounts to $3,804.41. The liquidator claims the full $3,804.41 while the petitioner takes the position that the liquidator is entitled at most to that part of the $3,804.41 which represents the reasonable value of the company's servicing of the mortgage for the period in question.

On May 1, 1933, and again on August 1, 1933, the *mortgagor* defaulted in respect of amortization payments due under the bond and mortgage. Although the *company* was not itself actually in default as to these payments, the eighteen months' period of grace not having run, the regulations promulgated by the Superintendent of Insurance forbade its making remittances to mortgage investors except out of sums actually received from mortgagors, less expenses of collection. While these regulations were in force the company could not have complied with its guaranty even if it were otherwise willing and able to do so. The regulations were followed by rehabilitation and then by liquidation. To allow the company to obtain the full premium of one-half of one per cent per annum for the period beginning on May 1, 1933, and ending on August 4, 1933, would result in the company's receiving compensation for its guaranty despite the fact that it was never in a position since May 1, 1933, to perform the same. The circumstance that the regulations promulgated by the Superintendent of Insurance may not be chargeable to the company or to any wrongdoing on its part is beside the point. The company is not entitled to receive the premium for its guaranty without complying with the guaranty. The reason for its inability to comply is immaterial so long as it is not due to the conduct of the certificate holders. In the case of *Matter of People (Bond & Mort. Guar. Co.) (supra)* the decision was based, not upon any finding that the guaranty company was at fault, but rather upon the injustice which would result if the company were permitted to retain the agency without being able to furnish the stipulated consideration (at p. 426): " What would a reasonable and fair-minded business man in the place of the Guarantee Company be entitled to expect in the situation in which the parties now find themselves *without fault of either?* " (Italics mine.)

It follows from the foregoing that the liquidator is entitled only to that part of the $3,804.41 which represents the reasonable value of the servicing performed by the company. An official referee will be designated to take proof as to the proper amount.

A few words are necessary in respect to the petitioner's claim that the amount ultimately found due to the liquidator for the servicing from May 1, 1933, to August 4, 1933, is subject to a set-off for the total amount of the certificate holders' claims upon the

company's guaranty. If the funds were in the possession of the certificate holders, there might be considerable justification for permitting such a set-off. The fact is, however, that the funds are in the hands of the Mortgage Commission, in a segregated account, transferred to the Commission by the liquidator, and held subject to adjudication as to its disposal. Had it not been for the Superintendent's rules and regulations and the desire of securing a judicial determination as to the rights of the parties, the liquidator could have deducted and retained the proper amount of the servicing fee, in which event there could be no set-off of the claims upon the guaranty. The transfer of the funds to the Mortgage Commission did not change the rights of the parties, for section 6 of the Mortgage Commission Act* expressly provides that the transfer to the Mortgage Commission, which is not a voluntary one on the part of the Superintendent of Insurance, shall be "without prejudice to the equitable rights" of the latter " or of the respective guaranty corporations * * * previously having possession and/or control of, or legal title to " the transferred funds or property.

The answering papers submitted on the motion indicate that the Mortgage Commission (1) has set aside out of the differentials previously referred to " an interest reserve " of $1,628.22, representing the difference between one-half of one per cent and the service charges of three-eighths of one per cent for the period commencing May 15, 1935 (the date of the take-over by the Mortgage Commission), and expiring November 1, 1935; and (2) has deducted out of the same differentials an advance servicing fee of $888.13 for the month of November, 1935. No attempt has been made by the Commission, either in its brief or otherwise, to justify the setting up of the reserve or the deduction of the servicing fee. In view of the fact that there neither are nor have been any defaults in interest or taxes, there appears to be no good reason for the creation of a reserve or for the deduction of a servicing fee prior to the rendition of the services covered thereby. The claim is accordingly overruled.

The motion is granted to the extent heretofore indicated. Settle order.

---

*Laws of 1935, chap. 19, as amd.