COMMISSIONER OF INSURANCE *vs.* CONVEYANCERS TITLE INSURANCE AND MORTGAGE COMPANY & others.

Suffolk.   February 3, 1937. — February 24, 1937.

Present: PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Receiver. Mortgage Company. Title Insurance Company. Mortgage,* Of real estate: "parti-mortgage receipt."

Receivers, appointed under the provisions of § 6 of G. L. (Ter. Ed.) c. 175 as amended by St. 1933, c. 107, § 3, and § 114 of said c. 175, to settle the affairs of a title insurance company engaging, under the provisions of its charter and § 47 (Eleventh) of said c. 175, in lending money on notes secured by mortgages and then delivering to investors "parti-mortgage receipts," each representing a fractional interest in a specified mortgage and entitling the investor to share in the principal and interest paid thereon, were entitled to the possession and management of the mortgage notes and mortgages, and the investors had no right to withdraw them from the receivers' control and to have the possession and control thereof transferred to a trustee for their benefit, irrespective of whether the company had been a trustee for or debtor of the investors.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 24, 1936, for the appointment of a receiver or receivers of Conveyancers Title Insurance and Mortgage Company, and of Realty, Inc.

Interlocutory decrees were entered by order of *Lummus,* J., appointing receivers and, later, permitting sundry holders of parti-mortgage receipts to intervene, and the suit was reserved for determination by the full court upon the pleadings and a statement of agreed facts.

*H. LeB. Sampson, (E. A. Howes* with him,) for the intervener Gage.

*B. G. Davis, pro se.*

*J. J. Kaplan & R. V. Brown,* for the interveners Kaplan and another.

*H. Williams, (R. M. Russell* with him,) for the interveners Ellis and another.

M. Witte, (F. R. Mullin, G. I. Kellaher, & D. M. Brackman with him,) for the intervener Fine.

G. Alpert, (A. L. Brown & L. A. Cohen with him,) for the receivers.

LUMMUS, J. Upon the bill, filed on November 24, 1936, a single justice of this court on December 10, 1936, appointed three permanent receivers of the defendant corporation Conveyancers Title Insurance and Mortgage Company (hereinafter called the Company) and its wholly owned subsidiary corporation Realty, Inc. G. L. (Ter. Ed.) c. 175, § 6. Various holders of so called parti-mortgage receipts or of so called mortgage certificates issued by the Company intervened, to obtain a determination of their rights and in particular to obtain the delivery and transfer to them, or to a new trustee to be appointed, of the mortgages held by the Company and represented by their receipts and certificates. The facts being agreed, the single justice reserved the intervening petitions for the full court.

The Company was incorporated in 1889 for the purpose of examining and insuring titles to real estate, and during its existence wrote about four thousand policies of the face value of about $32,000,000, upon which liability was to cease upon a transfer of title by the insured. Whether there is any actual danger of liability upon any of these policies is not known. It is common knowledge that title insurance never became usual in Massachusetts. The system of land registration, which was adopted in 1898, reduced both the need and the desire for it. In 1891 and 1892 the charter was amended to enable the Company "to buy and sell mortgages of Massachusetts real estate and act as agent in negotiating the same," and "to act as agent or broker for the purchase, sale and care of real estate." For many years its principal business has been the lending of money on mortgages and the sale of interests in them, represented by receipts and certificates such as are held by the petitioners. G. L. (Ter. Ed.) c. 175, §§ 47, Eleventh; 114.

The nature of the parti-mortgage receipts (occasionally

called guaranteed parti-mortgage certificates) may be first considered. After the Company had lent money to a landowner upon a note and had taken a real estate mortgage as security, it prepared for sale to investors parti-mortgage receipts, each representing a fractional interest in the mortgage and in the aggregate representing the whole mortgage. The mortgage was deposited with the National Shawmut Bank of Boston, which was to register the receipts and see that the total of registered receipts did not exceed the amount of the mortgage. We need not consider the form of these receipts prior to September 15, 1932, for on that date about ninety-nine per cent of the receipts were surrendered and new receipts were issued in a different form under a plan of readjustment. None of the petitioners holds a receipt of an earlier issue.

In each of the receipts the Company acknowledged payment to it of a certain sum of money as the purchase price of "a parti-interest to that amount in a certain" described note and mortgage. "It is agreed that the owner hereof shall receive no assignment of the mortgage other than this receipt." The receipts continue: "The note shall remain in the name of the Company, which alone shall have full and complete powers in reference thereto as if it were the absolute owner thereof, including, without limiting the foregoing, the right to collect and receive payment and to make a valid and binding discharge thereof, to extend said mortgage or any installment thereof from time to time, but in no event shall said mortgage, or the installment thereof with respect to which this receipt is issued, be extended beyond [here a date was inserted], which shall be the due date hereof. The Company may, at its discretion, in lieu of extending said mortgage, allow the mortgage to continue overdue or foreclose it; and, if the Company becomes the purchaser at foreclosure sale, the Company shall hold the property in trust in lieu of the mortgage for the benefit of the holders of the parti-mortgage receipts issued with respect to said note without being accountable for the amount bid by it at such foreclosure sale . . . Any payment received on account of the principal of the note, or any proceeds received from the sale

of the mortgaged property, . . . after deducting all reasonable and proper charges, shall be held by the Company in trust and shall forthwith be paid over pro rata among the parti-owners of the note . . . . The Company guarantees and insures the owner hereof against the loss of the whole or any part of the face amount hereof, whether such loss arises from encumbrances, defective title or the insufficiency of the mortgage held as security for the note, or from any other cause. . . . The Company agrees to distribute to the holder hereof out of interest collected by it on the note an amount equivalent to [here was inserted a rate per cent usually one and one-half per cent less than that received as interest on the note secured by mortgage] per cent . . . per annum on the face amount of this receipt, . . . except as hereinafter provided. All interest received from said note, after deducting the difference between the rate of interest payable on the parti-mortgage receipts outstanding with respect to said note and the rate payable on said note, which difference the Company shall be entitled to retain for its own use, shall be held in trust by the Company for the pro rata benefit of the holders of all relative parti-mortgage receipts, and shall be paid to such holders on the interest dates herein provided. In the event the interest so collected and held in trust on any interest date shall be insufficient to pay the interest then due on the relative parti-mortgage receipts, the amount so held in trust shall be distributed pro rata to the holders of said parti-mortgage receipts, and the difference between the amount so distributed and the interest provided herein shall be paid by the Company in or within one (1) year after such interest date."

"The Company shall have the right to purchase this receipt on any interest date, provided written notice of its intention to so purchase this receipt shall be mailed to the holder at his registered address at least sixty (60) days prior to such interest date, upon payment of any unpaid balance of the face amount hereof, together with any interest thereon unpaid to the date of purchase, and the delivery to the holder of a warrant for the payment of an amount equal to one per cent (1%) of the amount of this

receipt at any time remaining unpaid from the date hereof until the date of such purchase, to be paid to the holder before any amount shall be paid to the stockholders of the Company either as dividends or in liquidation or in receivership. The Company agrees with the holder hereof that no dividends shall be paid on its capital stock and no distribution made to stockholders in case of liquidation or receivership until this receipt shall have been paid or otherwise cancelled and until a further amount equivalent to one per cent (1%) per annum on the face amount hereof or any part thereof remaining unpaid from the date hereof until this receipt shall be purchased by the Company or otherwise cancelled shall be paid to the holder, and the Company will, upon the payment hereof at maturity or the purchase hereof by call, issue to the holder a warrant covering the amount so to be paid before any dividends or distributions are made by the Company to its stockholders. The Company further agrees that in the event of the appointment of a permanent receiver of its property, all obligations of the Company hereunder, including its agreement to pay the face amount hereof, shall forthwith become due and payable."

The deposit agreement with the bank, to which all receipt holders assented and agreed, provided as follows: "No receipt holder shall be entitled to the possession of any deposited note or mortgage or to any division or setting apart of his specific interest in any deposited note or mortgage. Only the Company shall have the right to collect either interest or principal of any deposited note." One of the petitioners owns a parti-mortgage receipt covering the whole of a mortgage. Others represent the ownership of parti-mortgage receipts covering in the aggregate the whole of a mortgage. Others represent fractional interests.

The insured first mortgage certificates are much like the parti-mortgage receipts in form and as to the rights created. The essential differences are that the certificates conveyed an interest, not in one mortgage but in a block or pool of mortgages, taken together, and that provision was made for withdrawing one mortgage and substituting

another.  Each certificate contained the additional provision that the Company agreed to buy back the certificate at its par value with interest; and this provision was contained in the certificates issued before September 15, 1932, as well as in those issued afterwards.  One of the petitioners holds a certificate issued before September 15, 1932, and two others hold certificates issued under the agreement of September 15.  But in the view that we take of the case there is no difference as to their rights, so far as the main purpose of these petitions is concerned.

The securities issued by the Company and outstanding are as follows: (1) mortgage certificates antedating September 15, 1932, $20,000; (2) mortgage certificates under the plan of September 15, 1932, $5,281,700; (3) parti-mortgage receipts antedating September 15, 1932, $71,800; (4) parti-mortgage receipts under the plan of September 15, 1932, $7,186,834.09; (5) mortgages assigned to purchasers and guaranteed by the Company, $58,000.  The mortgages represented by these securities, or in case of foreclosure the properties themselves, are held subject to the rights of security holders.  Some of the mortgages are in good standing and not in arrears.  Others are in arrears, but some interest is being received.  In other cases the income of the real estate is insufficient to pay the current expenses, nothing is being paid on the mortgage interest, and the Company for its own protection has had to advance money for taxes and repairs.  Such advances amount to $185,151.  Other mortgages have been foreclosed and bought in by the defendant Realty, Inc., a wholly owned subsidiary corporation, which has given a note and mortgage to the Company for the entire purchase price.

Besides the mortgages against which receipts and certificates have been issued, the principal assets of the Company in the hands of the receivers are (1) forty-seven mortgages of a face value of $600,000, set apart as a guaranty fund upon title insurance policies as required by G. L. (Ter. Ed.) c. 175, § 116; (2) mortgages pledged with banks for loans to the Company of $202,323;* (3) mortgage notes

---

* Cents are omitted in the sums stated in this paragraph. — REPORTER.

and mortgages, and also parti-mortgage receipts, pledged with Reconstruction Finance Corporation for loans to the Company of $221,344; (4) unsold parti-mortgage receipts of the face value of $127,058; and (5) unpledged mortgages of the face value of $539,020. The net value of these assets above the liabilities for which they are pledged does not appear. The total assets of the Company are less than its liabilities, and at the time when the permanent receivers were appointed the Company was unable to meet its debts as they matured. Besides its borrowings, and its liabilities to security holders which were matured by the receivership, there were interest upon the securities, due to security holders and unpaid, amounting to $1,188,273, overdue taxes amounting to $353,351 upon real estate upon which the Company held mortgages, and overdue taxes amounting to $394,436 upon foreclosed real estate held by Realty, Inc.

The parties have presented with commendable industry and thoroughness the question whether the relation between the Company and its receipt and certificate holders was that of trustee and *cestuis que trust*, or that of debtor and secured creditors. The petitioners argue that the Company was only a trustee, that the powers of the trustee cannot be transferred to receivers, and that the mortgages ought to be delivered to the petitioners or placed in the control of new trustees to be appointed after notice to all *cestuis*.

Many cases arising in New York, where the collapse of companies of this sort has caused much litigation, have been cited as to the true relation of the parties. These cases require a careful study of the form of the securities there under discussion. Where a company of this sort assigned a mortgage and added its guaranty, although reserving by contract the right to perform services to the assignee for a consideration, it has been held that the assignee becomes the owner and the company merely a guarantor. *Matter of People (Bond & Mortgage Guarantee Co.)* 267 N. Y. 419. *Matter of People (New York Title & Mortgage Co.)* 154 Misc. (N. Y.) 586. *Matter of New York Title & Mortgage Co.* 160 Misc. (N. Y.) 1. *Fearey* v. *Williams*, 72 Fed. (2d)

263. On the other hand, where a company of this sort sold interests in a pool consisting of a number of mortgages which might be changed by substitution, and guaranteed the investment, the relation has been held that of debtor and secured creditors. *Matter of People (Title & Mortgage Guarantee Co. of Buffalo)* 264 N. Y. 69, 87, 88. *Prudential Ins. Co.* v. *Liberdar Holding Corp.* 72 Fed. (2d) 395. *In re Westover, Inc.* 82 Fed. (2d) 177, 180. Where the receipts or certificates represent fractional interests in a single mortgage, the law does not seem to be clearly settled in New York. *Matter of New York Title & Mortgage Co.* 160 Misc. (N. Y.) 67. *Kline* v. *275 Madison Avenue Corp.* 149 Misc. (N. Y.) 747.

We have not found it necessary to determine with technical accuracy the legal relation between the Company and its investors. What we have to say has no application to the mortgages assigned and guaranteed by the Company, for no holder of them is a petitioner. If the relation between the Company and its receipt and certificate holders in the present case was a trust relation, it was far from a typical one. The Company was liable for the face value of the investment, both principal and interest, regardless of the prudence of its management. The Company had a right to buy the investment, and thus get rid of the investor, while retaining the property in which the investor had an interest. If the Company was a trustee of the note and mortgage, and the investors were *cestuis que trust*, the Company itself was also a *cestui que trust* to the extent of the share of the income which it was "entitled to retain for its own use" and which constituted its only means of living. Its right was something more than the right of a trustee to compensation. The right of the Company to this income was protected by stringent provisions giving it all the rights and powers of complete ownership and control, and denying to investors all right to possession, assignment, division or setting apart of any mortgage.

The main question argued in this case seems to be answered by our statutes. In G. L. (1921) c. 175, § 47, Eleventh, the purposes for which title insurance companies could be incor-

porated were stated as follows: "To examine titles of real and personal property, furnish information relative thereto, and insure owners and others interested therein against loss by reason of encumbrances, defective title or the insufficiency of any mortgage held or sold by the insurer as security for the amount secured by such mortgage, or against any other loss in connection with any such mortgage or any interest therein, and to buy and sell mortgages of real property and interests therein." That language remains in force. G. L. (Ter. Ed.) c. 175, § 47, Eleventh. By G. L. (1921) c. 175, § 6, provision was made for the appointment, upon application of the commissioner of insurance, of receivers "to take possession of the property and effects of the company and to settle its affairs, subject to such rules and orders as the court may prescribe." In 1921 a title insurance company was not within that provision. G. L. (1921) c. 175, § 114. But that provision, and all of § 6, were made applicable to title insurance companies by Sts. 1924, c. 406, § 10; 1925, c. 73; and 1928, c. 157, which are now brought forward in G. L. (Ter. Ed.) c. 175, § 114. As the law now stands, receivers of title insurance companies may be appointed for the purposes stated in the quotation from G. L. c. 175, § 6, *supra.* G. L. (Ter. Ed.) c. 175, § 6. St. 1933, c. 107, § 3.

All the petitioners took title to their securities at a time when the statute was substantially as it is now. No contract or property rights of theirs are invaded by its application, for they took title in contemplation of it. The statute contemplates a receivership of the Company, not merely in its character and capacity as an insurer of titles, but in its entirety and with respect to all the business permitted by G. L. (Ter. Ed.) c. 175, § 47, Eleventh. The receivers, by § 6, are "to settle its affairs, subject to such rules and orders as the court may prescribe." The decree of December 10, 1936, appointing permanent receivers, made them receivers "of all the property, assets and effects, legal or equitable or both of every kind and nature belonging to or in the possession or control of the" Company, with power "to continue without further authority from the court the business and affairs heretofore conducted by the" Company.

We think that the settlement of the "affairs" of this Company implies, or at least permits, the substitution of the receivers for the Company in the holding and management of the mortgages for which the receipts and certificates were given, during such period as may seem to the court proper for the liquidation of the Company and the settlement of its affairs. For this purpose the technical nature of the relationship between the Company and its investors is not important. We are of opinion that the investors have no right to withdraw the mortgages at their will. A similar result has been reached in New York under a statute of that State. *Matter of People (Title & Mortgage Guarantee Co. of Buffalo)* 264 N. Y. 69. *Matter of People (Westchester Title & Trust Co.)* 268 N. Y. 432. *Wolff* v. *Mortgage Commission,* 270 N. Y. 428. *Matter of Mortgage Commission (1175 Evergreen Avenue)* 270 N. Y. 436. *Matter of People (New York Title & Mortgage Co.)* 241 App. Div. (N. Y.) 351.

We have now decided the principal point raised by the petitions and argued by the petitioners. Some of the petitioners pray for a declaration of their rights and for other relief. No substantial dispute seems to exist with regard to the right of the investors to require the receivers to segregate the mortgages and the income from them, and to give to each group of investors the income from the mortgages held for it, less the share to which the Company is entitled. It may be that in the future troublesome questions may arise as to the details of administration. We can hardly decide them now. A decree is to be entered dismissing the several petitions so far as they pray for a transfer of title to or custody, possession or management of notes, mortgages or other property from the receivers to the petitioners or to any trustee or other person or persons, and dismissing the several petitions without prejudice in other respects.

*Ordered accordingly.*