## (April 17, 1939.)

In the Matter of the Liquidation of Bond and Mortgage Guarantee Company.

In the Matter of the Petition of Nathan Lifshutz and Elsa Lifshutz, Appellants, Holders of a Certificate in Bond and Mortgage Guarantee Company Certificated Mortgage Issue Known as Guarantee No. 181,626 and Covering Premises 6 Franklin Street, Garden City, Long Island, for an Order Directing Louis H. Pink, as Superintendent of Insurance of the State of New York, as Liquidator of the Bond and Mortgage Guarantee Company, and Mortgage Commission of the State of New York, Respondents, to Account for and Pay Over to All Certificate Holders in Said Issue the Moneys Deducted by Them for Servicing the Said Mortgage Over and Above the Actual Cost of Servicing the Same.

The share which petitioners purchased in the bond and mortgage was $2,700 with interest at five and one-half per cent. The total of their share in the principal of the bond and mortgage was $2,700 and their total share in the interest was five and one-half per cent instead of the six per cent which the mortgagor was required to pay. They have received that share in full, both as to principal and interest, and, therefore, are entitled to nothing more. The extent of the purchase here was similar to that in *Matter of Bond & Mortgage Guarantee Co.* (243 App. Div. 368). There is nothing to the contrary in *Matter of Morgan* (277 N. Y. 203).

Lazansky, P. J., Carswell and Close, JJ., concur; Johnston, J., dissents and votes to reverse and remit the matter to Special Term, with opinion; Hagarty, J., concurs with Johnston, J.

JOHNSTON, J. (dissenting). The dispute here is primarily between the certificate holders in the above guaranteed mortgage, represented by petitioners Lifshutz, and the creditors of the insolvent guarantor, Bond and Mortgage Guarantee Company, represented by the Superintendent of Insurance (hereinafter called the " Superintendent ") as liquidator. The certificate holders claim they are entitled to the difference between the reasonable cost of servicing the mortgage and the one-half of one per cent which the Superintendent, as rehabilitator, and thereafter the Mortgage Commission, retained.

In 1931 petitioners purchased from the Title Guarantee and Trust Company a $2,700 guaranteed mortgage participation certificate in a bond and mortgage bearing interest at six per cent. The certificate was issued and sold by the title company, which assigned to petitioners an undivided share in the bond and mortgage equal to the amount of the certificate, " with interest thereon at the rate of 5½% per annum." The assignment was accompanied by a contract of guaranty, executed by the Bond and Mortgage Guarantee Company, by which the latter guaranteed the payment of the principal and interest at the rate of five and one-half per cent. By the contract of guaranty the company " is made irrevocably the agent of the insured, until the bond and mortgage be paid, with the exclusive right  *  *  *  to collect the interest as it falls due on the bond and mortgage " and " Out of the interest so collected this Company is authorized to retain as its premium for this guarantee the excess over the guaranteed rate named above."

On August 2, 1933, the Bond and Mortgage Guarantee Company was placed in rehabilitation under the Insurance Law, and the Superintendent was appointed rehabilitator. Pursuant to the rehabilitation order and the statutes (the Insurance Law and the Schackno Act, Laws of 1933, chap. 745), the Superintendent, as rehabilitator, took over and administered the bond and mortgage. He continued to do so until May 15, 1935, when the Mortgage Commission, by virtue of the power vested in it under the Mortgage Commission Act (Laws of 1935, chap. 19) took them over. The mortgagor made all the payments due on its bond and mortgage and petitioners received interest at the rate of five and one-half per cent. In March, 1937, petitioners, as well as the other certificate holders, received payment of the principal amount of their certificates. On December 31, 1937, an order was made under the Insurance Law placing the Bond and Mortgage Guarantee Company in liquidation and appointing the Superintendent as its liquidator.

During the period that the Superintendent (as rehabilitator) and the Mortgage Commission successively administered the bond and mortgage, they both collected from the mortgagor interest at the rate of six per cent and remitted to the certificate holders interest at the rate of five and one-half per cent. They retained the one-half of one per cent, apparently pursuant to the terms of the contract of guaranty.

Petitioners, on behalf of themselves and other certificate holders, commenced this proceeding to recover from the Superintendent, as liquidator of the Bond and Mortgage Guarantee Company, and from the Mortgage Commission the difference between the one-half of one per cent which they retained and the reasonable cost of servicing the mortgage. The Mortgage Commission admits that it is entitled only to such reasonable cost. It says that during the period of its administration the excess was $1,101.27 and it asks for instructions as to the disposition of this sum.

Both the Superintendent and the Mortgage Commission are, in a sense, statutory receivers, and are governed by the statutes under which they have been appointed. Any charge they make must find its basis in such statutes. The statutes (Schackno Act, Laws of 1933, chap. 745, § 4; Mortgage Commission Act, Laws of 1935, chap. 19, § 24) expressly prescribe the fees to be charged. For their services the Superintendent and the Mortgage Commission are entitled to receive only the reasonable sum which may be chargeable or allocable to the cost of servicing the mortgage. Their compensation is no longer to be measured by the terms of the contract of guaranty. When the rehabilitation order was entered on August 2, 1933, that contract was immediately suspended and became unenforcible for the period that the order remained in force. During the period that the contract of guaranty was suspended and unenforceable neither the guarantor nor its successors (the Superintendent and the Mortgage Commission) are entitled to the compensation specified in the contract. They are limited to the fees and charges prescribed by the statutes. (*Matter of Morgan*, 277 N. Y. 203.) Any *dicta* to the contrary in our decision in *Matter of Bond & Mortgage Guarantee Co.* (243 App. Div. 368) must be deemed overruled by the *Morgan Case* (*supra*).

The majority do not disagree with the conclusion that the fees of the Superintendent and the Mortgage Commission must be determined by the statutes and not by the contract. They take the position that by purchasing the certificate petitioners acquired the right to interest only at the rate of five and one-half per cent, and they can have no complaint, since they received the principal of their investment, with interest at that rate. This view is based on too strict and literal an interpretation of the certificate. Reading together all the provisions of the certificate and of the contract of guaranty (both of which are really one instrument), they clearly manifest an intention to assign to the purchaser an undivided interest in the bond and mortgage equal to the amount of the certificate and all the interest payable by the mortgagor, except that such interest is to be diminished by one-half of one per cent, which is to be retained by the guarantor, Bond and Mortgage Guarantee Company, as the premium for its guaranty. This intention can readily be ascertained from the fact that the seller or assignor of the certificate, Title Guarantee and Trust Company, does not retain any right either with respect to the bond and mortgage as a whole or with respect to any part of the interest. On the contrary, the express provisions of the certificate, quoted below, clearly show that the Title Guarantee and Trust Company divested itself of all proprietary rights

in the bond and mortgage and holds them merely as a trustee for the benefit of all the certificate holders. Hence, the certificate holders are entitled to all the interest payable by the mortgagor, except in so far as such interest may be diminished by the premium of one-half of one per cent which might be earned by the Bond and Mortgage Guarantee Company under its contract of guaranty. This interpretation, I believe, is in accord with the common understanding of those who sold and bought guaranteed mortgage certificates.

But, even assuming that under the terms of the certificate petitioners acquired the right to interest only at the rate of five and one-half per cent, this still would not give the guarantor, Bond and Mortgage Guarantee Company (or its successors), the right to retain the one-half of one per cent. Its right to this compensation fell with its guaranty when it was placed in rehabilitation. Under no circumstances should it or its successors be allowed to recover compensation for a guaranty which had ceased to exist. Under the theory advanced by the majority, the only one, other than the certificate holders, who might possibly have a claim to this one-half of one per cent would be the seller or assignor of the certificate, Title Guarantee and Trust Company, from whom petitioners purchased it. But that company asserts no claim to this fund; and, indeed, by the very terms of the certificate it is precluded from making any claim on its own behalf. The certificate provides: (a) That the " bond and mortgage, together with the policy of the Bond and Mortgage Guarantee Company, guaranteeing to holders of this and similar certificates payment of principal and interest, are held by the Company [Title Guarantee and Trust Company] as depositary and agent for the holders of such certificates; " (b) that the " Company [Title Guarantee and Trust Company] holds and shall continue to hold said bond and mortgage, said policy of Bond and Mortgage Guarantee Company and the other instruments and evidences of title relating thereto for the benefit of the purchaser and any other persons interested therein; " and (c) that the " Company [Title Guarantee and Trust Company], on receipt of the interest and principal of said bond and mortgage, as required therein, shall distribute the same among the persons entitled thereto." In view of these explicit provisions it is difficult to understand how it can be said that if there be a residuum of interest it should go to the guarantor, Bond and Mortgage Guarantee Company, or to the Superintendent, as its liquidator. At best, under the majority's literal interpretation of the certificate, the *Title Guarantee and Trust Company* might be entitled to assert a claim; but any recovery by it would necessarily be impressed with a trust in favor of the certificate holders.

In brief, whatever rights the Title Guarantee and Trust Company may have, the point is that as between the contending parties here — the certificate holders on the one hand and the liquidator of the guarantor on the other — under no circumstances is the liquidator entitled to this one-half of one per cent. The disposition of this fund is of no concern to the guarantor or its liquidator. The contractual right thereto was suspended by the entry of the rehabilitation order and it was irretrievably lost by the entry of the. liquidation order. By the terms of the statutes (Schackno Act and Mortgage Commission Act) the compensation of the Superintendent, as rehabilitator, and of the Mortgage Commission is expressly defined and limited. They are entitled to receive such limited compensation and nothing more. (*Matter of New York Title & Mortgage Co* , 160 Misc. 1; affd., 251 App. Div. 805; affd., *sub nom. Matter of Morgan,* 277 N. Y. 203; also *Matter of*

*Lawyers Mortgage Co. [Series 19,445]*, 168 Misc. 810, 812; *Matter of Lawyers Mortgage Co. [Serviced Equities]*, Id. 762, 765.)

The Superintendent also urges that the *Morgan Case (supra)* is applicable only where the liquidation order has been entered before the certificates have been paid. This, on the theory that until the entry of such an order rehabilitation may be successfully concluded and the guarantor may resume business and perform its contracts. Here the liquidation order was entered nine months after the certificates were paid. No such distinction can be made, particularly when the record shows that a liquidation order has in fact been entered. The date the liquidation order is entered is of no consequence. While it is possible that a rehabilitation proceeding may come to a successful conclusion and that the guarantor may thereafter resume operations, and in that event the contract of guaranty may be reinstated and the right to receive the one-half of one per cent as a premium for the continuation of the guaranty may be restored, this possibility must give way to the established fact that in the instant case the rehabilitation proceeding was unsuccessful, that a liquidation order has been entered, and that the functions of the guarantor for all practical purposes have been irrevocably terminated.

The order should be reversed and the matter remitted to the Special Term to determine the reasonable amount of the service charge, allocable or chargeable to the cost of servicing this mortgage, and to direct that the difference between the amount so determined and the one-half of one per cent be distributed to the petitioners and to other holders of similar certificates.

Hagarty, J., concurs with Johnston, J.