■ HOWARD MINTZ et al., Appellants, v ROCHELLE PAZER et al., Respondents, et al., Defendant. [60 NYS3d 74]—

In an action for a judgment declaring the rights of the parties under a shareholders' agreement, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Schmidt, J.), dated February 10, 2015, as granted the motion of the defendants Rochelle Pazer, Dina Bassen, and Lisa Pazer for an order setting the valuation date for the defendant Rochelle Pazer's shares of the defendant Astoria Holding Corp. as contemporaneous with the parties' exchange of appraisals of those shares.

Ordered that the order is affirmed insofar as appealed from, with costs.

The defendant Astoria Holding Corp. (hereinafter Astoria) owned a shopping center in Brooklyn. Pursuant to the shareholders' agreement for Astoria, the plaintiffs Howard Mintz and Susan Mintz-Bello (hereinafter together the Mintzes) owned just under 48% of Astoria's shares and the defendant Rochelle Pazer owned just over 52% of its shares. When a deadlock, as defined by the shareholders' agreement, arose between the Mintzes and Pazer, the Mintzes, in accordance with the terms of the shareholders' agreement, served a "right of first offer" to purchase Pazer's shares, which the Supreme Court held, in an order dated December 30, 2013, entitled them to buy her interest out pursuant to the appraisal process set forth in the shareholders' agreement. That appraisal process involved the Mintzes and Pazer each hiring an appraiser to determine the purchase price of Pazer's interest in Astoria, which was to be equal to the appraised fair market value of all assets of Astoria less all of Astoria's liabilities, multiplied by a fraction, the numerator of which was the number of shares to be sold, and the denominator of which was the total number of shares issued. The shareholders' agreement provided that if their appraisals varied by 10% or less, they were to use the average of the two, and if they varied by more than 10%, they were to agree upon another appraiser,

who would select between the two appraisals for a final and binding determination of the value, which was then payable in cash within 30 days.

The shareholders' agreement provided that, in determining the purchase price, the appraisers were to determine the "full pro rata share of net liquidation asset value" represented by Pazer's shares, "as if all Corporation assets were sold on the open market, after reasonable and diligent marketing and net of all reasonable and customary selling costs and expenses," and "the net asset value of all Corporation assets after payment of all Corporation liabilities fully distributed to all Shareholders pro rata." Unless provided otherwise, time was of the essence as to all of the provisions of the shareholders' agreement.

The Mintzes refused to agree to a date to exchange appraisals, citing possible environmental contamination at the shopping center, which they claimed to need more information about before the purchase price of Pazer's interest could be accurately appraised. Thereafter, in an order dated November 7, 2014, the Supreme Court directed the parties to exchange appraisals within 10 days of notice of entry of that order. The Mintzes and Pazer also disputed the date as of which Pazer's interest should be valued, with the Mintzes arguing that it should be valued as of October 31, 2012, based on an exchange of emails between the parties' counsel prior to the commencement of this action, and Pazer arguing that her interest should be valued contemporaneously with the exchange of the appraisals. The Mintzes appeal from an order dated February 10, 2015, in which the court granted the motion of Pazer and her daughters, the defendants Dina Bassen and Lisa Pazer, to set the valuation date of the subject shares as contemporaneous with the exchange of the appraisals.

"[I]n searching for the probable intent of [contracting] parties, lest form swallow substance, our goal must be to accord the words of the contract their 'fair and reasonable meaning' (*Heller v Pope*, 250 NY 132, 135 [1928]). Put another way, 'the aim is a practical interpretation of the expressions of the parties to the end that there be a "realization of [their] reasonable expectations" ' (*see Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 400 [1977], quoting 1 Corbin, Contracts, § 1; *see, also,* 4 Williston, Contracts [3d ed], § 600, pp 284-285). Concordantly . . . not merely literal language, but whatever may be reasonably implied therefrom must be taken into account (10 NY Jur, Contracts, § 191, p 96; *Matter of People [Bond & Mtge. Guar. Co.]*, 267 NY 419, 425 [1935]). . . . [U]nless

there are reservations to the contrary, embraced in the interpretative result should be ' "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" ' (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 69 [1978], quoting from 5 Williston, Contracts [rev ed, 1937], § 1293, the substance of which is now in 4 Williston, Contracts [3d ed], § 610B)" (*Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 555 [1982]). " 'A written contract "will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." . . . The meaning of a writing may be distorted where undue force is given to single words or phrases' (*Empire Props. Corp. v Manufacturers Trust Co.*, 288 NY 242, 248 [1942], quoting 3 Williston, Contracts § 618)" (*Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]).

Here, the shareholders' agreement did not set a valuation date to be used for the subject shares in the event of a deadlock-induced buyout. Accordingly, it was left for the parties to agree on a valuation date in the event of such a buyout. In an exchange of emails in November 2012, the parties chose October 31, 2012, as the valuation date. The Supreme Court correctly concluded, upon viewing these emails in context, that the Mintzes and Pazer chose that date in the expectation and belief that the appraisals would be exchanged contemporaneously, and without delay. Nevertheless there was, subsequently, unanticipated delay in the exchange. Moreover, the parties' intent, as evidenced by the shareholders' agreement, was that the appraisals reflect the fair market value of the shares at the time of the sale. Thus, the court correctly held that the parties' emails did not evince a binding agreement to value the shares as of October 31, 2012, but that, viewing the shareholders' agreement, the emails, and all the circumstances together, the parties intended to set a valuation date that was contemporaneous with the actual exchange of appraisals. Balkin, J.P., Sgroi, Cohen and Duffy, JJ., concur.

---

Motion by the respondents Rochelle Pazer, Dina Bassen, and Lisa Pazer to dismiss an appeal from an order of the Supreme Court, Kings County, dated February 10, 2015, on the ground that the appeal has been rendered academic. By decision and order on motion of this Court dated March 24, 2016, the motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is denied.