OPINION OF THE COURT
Fuchsberg, J.
In an action to recover a real estate brokerage commission, defendant East River Savings Bank appeals from an order of the Appellate Division, which, reversing Special Term on the law, granted summary judgment in favor of the plaintiff, executor of the broker’s estate, on his first cause of action.* This count was grounded on a written agreement between the broker and the bank. The bank’s contention is that it tendered extrinsic evidentiary facts sufficient to defeat the motion for summary judgment and that, even if it had not, the Appellate Division’s construction of the agreement was erroneous. We now uphold the Appellate Division’s determination.
The agreement, in letter form, related to a New York City commercial building on which the bank was in the process of foreclosing a defaulted first mortgage; at the time, no judgment of foreclosure had yet been entered. The letter-agreement, prepared by the broker but signed by both the bank and himself, read as follows:
“Re: 22 E. 42nd St. NYC
“In accordance with our understanding and in pursuance with your request at the meeting in your office on January 4th with Mr. Frank O’Neill of McDonald Corporation, I am sending you this letter in duplicate with regard to my commission as the broker for the" sale of the above captioned property.
“My commission for the sale of the property or for the assignment of your mortgage to McDonald Corporation shall be $10,000.00 to be due at the time of title closing if the deal entails the sale of the property or at the time of assignment of your mortgage if the deal entails the sale of same.
*553 “In the event, for any reason, McDonald Corporation shall elect to act through a nominee or an assignee, then it is understood that I shall be entitled to the commission above stated”.
Thereafter, McDonald, the fast food chain, by its nominee, Franchise Realty Interstate Corporation, took title to the property. It did so after bidding it in at the foreclosure sale. The price, as revealed by the referee’s report, was sufficient to permit full satisfaction of defendant’s mortgage. This suit ensued when the bank balked at having to pay the $10,000 commission.
In defending the action, the bank pressed the position that the agreement manifests an intent that the broker be deemed to have earned the stated commission only if the bank “obtain[ed] title to the property by means of a foreclosure sale, with subsequent conveyance of the property to McDonald’s or its nominee”; that, since the acquisition proceeded along a different path, a “condition precedent ha[d] remained unfulfilled”; and that, as a consequence, nothing was due the broker. Moreover, when put to the test on plaintiff’s motion for summary judgment, the bank submitted two affidavits by which it professed to proffer extrinsic evidence to confirm its contentions.
However, neither affidavit filled that bill. One, by a counsel for the bank, since he laid no claim to any firsthand knowledge of the facts, was not competent for this purpose (see David Graubart, Inc. v Bank Leumi Trust Co. of N. Y., 48 NY2d 554, 559). The other, by a bank officer who had not signed the agreement, aside from essaying a vigorous argument as to how the bank believed the agreement should be interpreted, consisted of a compendium of conclusory, self-serving and even speculative assertions, such as comments on what “the parties had in mind in executing the letter” and what the broker should have “understood”. Though the officer also offered information that he had “dealt personally with plaintiff’s decedent”, neither the nature nor precise content of these dealings was specified. In short, neither affidavit offered either a tender of evidentiary proof in admissible form or a demonstration of an acceptable excuse for a failure to meet the “strict requirement” for such a tender in opposition to a *554 motion for summary judgment (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068; cf. Rotuba Extruders v Ceppos, 46 NY2d 223, 231).
Of course, had the tender been of requisite quality, the courts below would have had to determine whether the agreement was so beset by ambiguity that the determination of the intent of the parties required a trial at which a jury or other fact finder could clear up the ambiguity by passing on the credibility of the extrinsic evidence and whatever inferences reasonably could be drawn therefrom (Hartford Acc. & Ind. Co. v Wesolowski, 33 NY2d 169, 172). For, the threshold decision on whether a writing is ambiguous is the exclusive province of the court (Patterson, Interpretation and Construction of Contracts, 64 Col L Rev 833, 839).
Thus, absent such a tender, all that was available to the court in the present case was the writing itself. Ambiguous or not, the document then became one for construction by the Judge alone, since if “equivocality must be resolved wholly without reference to extrinsic evidence” the issue must be so determined (Hartford Acc. & Ind. Co. v Wesolowski, supra, p 172; cf. Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291). It follows that the concern that there might be some ambiguity, expressed by the sole dissenting Justice at the Appellate Division, was beside the point.
In this legal posture, whether the obligation of the Judge at nisi prius, in construing the written agreement, may be said, in an exact sense, to have been to pass on it as a matter of law, or whether it implicitly called upon him to treat with integral factual elements as well, the rule which leaves the matter in the hands of the Judge is supported by experientially indorsed considerations of policy and practicality (see Thayer, A Preliminary Treatise on Evidence at the Common Law, ch 5, Law and Fact in Jury Trials, pp 202-207). Rooted in ancient history (see Essays in Anglo-Saxon Law, p 230), this practice continues to be justified, inter alia, by “the judge’s superior equipment — his education and legal experience — to interpret written instruments and to give them reliability” (Patterson, Interpretation and Construction of Contracts, 64 Col L Rev 833, 837).
*555 Worthy of note too is that, by cataloguing this procedure “[a]s a determination of law, the trial judge’s interpretation of the meaning of a written contract is not as conclusive upon an appellate court as his ‘findings of fact’ would be and hence may be set aside as ‘an error’ of law”. (Patterson, ibid.)
Now exercising this right of review, we remember that, in searching for the probable intent of the parties, lest form swallow substance, our goal must be to accord the words of the contract their “fair and reasonable meaning” (Heller v Pope, 250 NY 132, 135). Put another way, “the aim is a practical interpretation of the expressions of the parties to the end that there be a ‘realization of [their] reasonable expectations’ ” (see Brown Bros. Elec. Contrs. v Beam Constr. Co., 41 NY2d 397, 400, quoting 1 Corbin, Contracts, § 1; see, also, 4 Williston, Contracts [3d ed], § 600, pp 284-285). Concordantly, as previously indicated, not merely literal language, but whatever may be reasonably implied therefrom must be taken into account (10 NY Jur, Contracts, § 191, p 96; Matter of People [Bond & Mtge. Guar. Co.], 267 NY 419, 425). As we recently declared, unless there are reservations to the contrary, embraced in the interpretative result should be “ ‘any promises which a reasonable person in the position of the promisee would be justified in understanding were included’ ” (Rowe v Great Atlantic & Pacific Tea Co., 46 NY2d 62, 69, quoting from 5 Williston, Contracts [rev ed, 1937], § 1293, the substance of which is now in 4 Williston, Contracts [3d ed], § 610B).
These guidelines in mind, examination of the agreement as a whole almost unavoidably impresses one with the idea that its broad concern was to effect a satisfactory liquidation of the bank’s interest in the property rather than with the design of the transaction by which this would be achieved. That an assignment of the mortgage itself was an expressed prospect also reinforces the inference that the goal of the bank, as a lender, was, as far as possible, to recoup its loan rather than become the property’s owner of record. And it seems to us that, reasonably and realistically read, the bank’s continuing commitment to the broker notwithstanding the possible change in the former’s status from that of foreclosing mortgagee to that of owner *556 would include the intermediate stages through which the process of making such a transition would normally take the parties. Surely, it demands no divining discernment to understand that the foreclosure sale was such an event. Accordingly, we agree with the Appellate Division’s conclusion that “just such a purchase as occurred is one of the alternatives which reasonably must have been contemplated by the agreement” (83 AD2d 801).
All this is not to say that another construction is beyond the realm of rationality. For instance, the bank focusing on the agreement’s word “deal”, urges that, since the “deal” by which McDonald’s nominee acquired title was not one to which it, literally or formally, was a party, the “deal” envisaged never materialized. In context, however, as we construe the agreement, so restricted an application of the term “deal” does not coincide with what the parties must have intended. Rather, it appears much more consistent with the general purport of the agreement to take it to be a way of fixing the point in time when decedent will have earned his commission, i.e., “at the time of title closing if the deal entails the sale of the property or at the time of assignment of your mortgage if the deal entails the sale of same” (emphasis added), and not as a limiting definition on the events that could precipitate it. Indeed, if ambiguity can be said to lurk in the placement of the word, in our opinion deference would be due to the confluence of the principal purposes of the parties to the agreement, here the bank’s desire to collect the debt and that of the broker to be compensated for successful efforts in this direction (4 Williston, Contracts [3d ed], § 619; 3 Corbin, Contracts, § 554; Restatement, Contracts 2d, § 202, Comment c).
For all these reasons, the order from which this appeal is taken should be affirmed, with costs.

 Plaintiff’s complaint also alleged three other causes of action. The second was in quantum meruit, the third for conspiracy to deprive the plaintiff of a commission and the fourth for related relief against other defendants. These play no part on this appeal.