Howard UNKER, Plaintiff,

v.

JOSEPH MARKOVITS, INC. and Nicholas V. Marsh, Defendants.

JOSEPH MARKOVITS, INC., Plaintiff,

v.

Howard UNKER, Defendant.

Nos. 85 Civ. 2022 (PKL), 85 Civ. 5361 (PKL).

United States District Court, S.D. New York.

Sept. 17, 1986.

---

46. Tr. at 53–54 (testimony of Robert Koch, former P & G staff accountant, insurance department).

47. *Id.* at 61–62.

48. *Id.* at 60, 64.

Donner, Hariton & Berka, P.C., Bay Shore, N.Y. (Ira M. Hariton, of counsel), for plaintiff/defendant Howard Unker.

Golenbock and Barell, New York City (Arthur M. Handler, of counsel), for defendant/plaintiff Joseph Markovits, Inc. and defendant Nicholas V. Marsh.

LEISURE, District Judge.

The above-captioned actions are related, at least insofar as they involve common parties and both arise out of events that occurred during and shortly after the period in which Howard Unker ("Unker") was employed by Joseph Markovits, Inc. ("JMI"), a New York corporation in the business of importing and selling artificial flowers.

In the first action, *Unker v. JMI*, 85 Civ. 2022 ("85-2022"), Unker has brought suit against his former employer as well as Nicholas V. Marsh ("Marsh"), President and Chairman of the corporate defendant. Unker's amended complaint sets forth four causes of action: a claim for breach of a severance pay compensation agreement against JMI; a claim for breach of an employment contract against JMI; a claim against Marsh individually for defamation; and a claim against JMI for Marsh's de-

famatory remarks, which Unker alleges were made in the scope of Marsh's employment at JMI. Unker's defamation claim against Marsh includes a prayer for punitive damages.

Defendants in 85–2022 have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Unker's employment contract claim and defamation claim against JMI. Defendant Marsh has also moved to dismiss any claim against him for punitive damages.

In the second action, *JMI v. Unker*, 85 Civ. 5361 ("85–5361"), JMI is suing its former employee for Unker's alleged default or promissory note. In 85–5361, both plaintiff and defendant have moved for summary judgment.

Subject matter jurisdiction in both actions is based upon diversity of citizenship, 28 U.S.C. § 1332.[1]

## I. UNKER'S SUIT FOR BREACH OF CONTRACT AND DEFAMATION (85–2022)

It is axiomatic that for purposes of a motion under Rule 12(b)(6), the allegations

of the complaint must be taken "at face value." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972). A motion to dismiss for failure to state a claim tests only the sufficiency of a complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). It should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Anderson v. Coughlin*, 700 F.2d 37, 40 (2d Cir.1983).

### A. Breach of Employment Contract

In 1977, having worked at JMI as the firm's Controller for over eight years, Unker was promoted to Vice President and given broad financial and administrative responsibilities. *See* Amended Complaint (85–2022) (hereinafter "Unker AC") ¶ 7. Unker alleges that one year earlier, in Spring 1976, JMI requested that he move

---

**1.** Although all parties alleged that the Court's jurisdiction was properly based on 28 U.S.C. § 1332, the pleadings filed in these two actions contained a basic inconsistency that caused the Court to raise the issue of its own subject matter jurisdiction *sua sponte.*

All the pleadings filed in both 85–2022 and 85–5361 clearly state that Unker is a New Jersey resident, and that Marsh is a resident of New York. Even if Unker and Marsh are diverse parties, however, complete diversity cannot exist in either action unless it is clear that JMI is not a citizen of New Jersey for purposes of the diversity statute. *See Wigand v. Flo Tek, Inc.*, 609 F.2d 1028, 1032–33 (2d Cir.1979) (where plaintiff and corporate defendant were both citizens of New York for purposes of diversity jurisdiction, federal subject matter jurisdiction could not be properly based on 28 U.S.C. § 1332). Congress has clearly stated that for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332 and removal jurisdiction under 28 U.S.C. § 1441, a corporation is deemed to be a citizen both of the state in which it is incorporated and in which its principal place of business is located. *See* 28 U.S.C. § 1332(c).

It is undisputed that JMI is a New York corporation, existing under the laws of this State. In addition, JMI has averred that its principal place of business is in New York City. *See* Complaint (85–5361) ¶ 3. Unker, however, has

asserted that JMI's principal place of business is located at the company's plant in Totawa, New Jersey. *See* Amended Complaint (85–2022) ¶ 21.

To resolve the uncertainty regarding JMI's principal place of business, the Court directed both parties to submit factual affidavits. The affidavits submitted establish that the offices of most of JMI's executive officers, as well as the company's showroom, are located in New York City. *See* Unker Affidavit ¶¶ 3–5; JMI Affidavit ¶¶ 5, 7–9, 11. In contrast, the New Jersey facility is a regional warehouse, one of five through out the country. *See* JMI Affidavit ¶¶ 9, 11.

Based on these facts, the Court finds that New York is the community in which JMI "has its most extensive contacts with, or greatest impact on, the general public." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979). Alternatively, the Court finds that New York is "the nerve center from which [JMI] radiates out to its constituent parts, and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959) (Weinfeld, J.). Accordingly, the Court is satisfied that JMI is a citizen of New York for purposes of 28 U.S.C. § 1332, and that subject matter jurisdiction in both 85–2022 and 85–5361 is properly based on diversity of citizenship.

from his home in South Jersey (Englishtown) to North Caldwell, New Jersey in order to be closer to the company plant in Totawa, New Jersey. *See* Unker AC ¶ 21.

Unker further alleges that, in reliance on what he terms JMI's "express promise" of long-term job security, he moved his family from their $30,000 home in Englishtown to a $90,000 home in North Caldwell. *See* Unker AC ¶ 24.[2] Although Unker admits that JMI consistently refused to accede to his request for a written, long-term employment, he nonetheless alleges that he was repeatedly told by the company's agents that JMI's "express policy was not to fire employees, particularly high level employees[,] without just cause." Unker AC ¶ 23. Thus, Unker alleges, JMI breached an express contract of employment with plaintiff by firing him without just cause on July 5, 1984. *See* Unker AC ¶¶ 37–38.

In moving to dismiss Unker's claim for breach of an employment contract, JMI relies upon the New York Court of Appeals' pronouncement that "absent ... an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983); *see also Sabetay v. Sterling Drug, Inc.*, 114 A.D.2d 6, 7, 497 N.Y.S.2d 655, 656 (1st Dep't 1986) (under New York law, "hiring is presumed to be at will").[3]

Unker, in turn, relies on *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982), in which the New York Court of Appeals found that an express statement in a company's policy statement did constitute a limitation on the employer's right to hire and fire at will. *See id*, 57 N.Y.2d at 465, 443 N.E.2d 441, 457 N.Y.S.2d 193. JMI points out, however, that Unker has failed to allege the existence of any written statement such as the one discussed in *Weiner*. Furthermore, JMI argues, Unker's allegations that he received constant assurances of long-term job security do not, standing alone, create a cause of action for breach of contract. *See Gould v. Community Health Plan of Suffolk, Inc.*, 99 A.D.2d 479, 479–80, 470 N.Y.S.2d 415, 417 (2d Dept.1984); *see also O'Connor v. Eastman Kodak*, 65 N.Y.2d 724, 725, 481 N.E.2d 549, 550, 492 N.Y.S.2d 9, 10 (1985) (popular perception of defendant as "womb to tomb" employer did not limit employer's common law right to terminate employment at will).

Nonetheless, although the facts of *Wiener* are obviously distinguishable from those in the case at bar, it is difficult to ignore that Court's statement that "[a]n agreement on the part of an employer not to dismiss an employee except for 'good and sufficient cause only' ... does not create an ineluctable employment at will." *Wiener*, 57 N.Y.2d at 465, 443 N.E.2d 441, 457 N.Y.S.2d 193. Significantly, Unker has specifically alleged that JMI, through its agents and employees expressly "promise[d] plaintiff that he would not be termi-

**2.** Plaintiff also alleges that, as a further means of assuring him that his job was secure, JMI loaned him a significant amount of money, without interest, so that he could purchase his new home in North Caldwell. *See* Unker AC ¶ 25. Unker is apparently referring to the $12,-000 promissory note upon which JMI claims he has defaulted. *See* discussion, *infra*, at 12–14.

**3.** With regard to all claims at issue in both 85–2022 and 85–5361, the parties have consistently assumed that New York law applies. *See, e.g.*, Defendants' Memorandum in Support of Motion to Dismiss (85–2022) at 5 n. 1 (stating assumption that this Court will apply New York

law, since JMI is a New York corporation, even though Unker's complaint does not allege where the purported employment contract was made or where it was supposed to performed). Although JMI and Marsh have occasionally cited to New Jersey case law as consistent with New York's, Unker has cited New York case law almost exclusively.

Under the circumstances, this Court "do[es] not feel obliged to undertake an investigation to determine" what state's law controls the claims of the parties. *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir.1986); *see Gelb v. Royal Globe Insurance Company*, 798 F.2d 38, 44 n. 5 (2d Cir.1986).

nated unless for just cause." Unker AC ¶ 29.[4]

■ Moreover, Unker's admission that JMI's promise of long-term employment was never put in writing is not fatal to his claim. Such promises, even if only made orally, are clearly enforceable if found to be supported by sufficient consideration. *See Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101, 109 (2d Cir.1985). In *Ohanian,* the Second Circuit, applying New York law, found that the plaintiff employee had presented sufficient evidence at trial for the jury to have found the existence of a contract of lifetime employment terminable by the employer only for just cause. *See id.* In addition, the Court indicated that plaintiff Ohanian's relocation from San Francisco to New York provided adequate consideration for his employer's oral promise of lifetime employment, *see id.,* an observation with clear application to Unker's allegation that he relocated his family at considerable expense in reliance on JMI's express promise that he would not be fired without just cause. *See* Unker AC ¶ 24.

■ Even the dissent in *Ohanian* implied that a claim for breach of an oral contract for lifetime or long-term employment might well withstand an attack on the sufficiency of the complaint if, as here, the defendant raised no question as to the Statute of Frauds. *See Ohanian,* 779 F.2d at 119 (Wyatt, J., dissenting). Accordingly, it can hardly be said, with regard to Unker's claim that JMI breached its contract of employment, that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102. Under such circumstances, dismissal for failure to state a claim is a drastic step which must not be taken. *See Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 80 (2d Cir.1985).

### B. *Defamation*

Unker alleges that at various times from April 1984 to June 1985, both at JMI's New Jersey plant and at its New York offices, defendant Marsh published a series of defamatory remarks about Unker to third persons. *See* Unker AC ¶¶ 41–46. For example, Marsh allegedly told others that Unker's actions had financially harmed JMI, *see id.* ¶¶ 41, 44, and that Unker was a "kike" and a "blackmailer." *Id.* ¶ 43. Unker further alleges that he has been emotionally traumatized as a result of Marsh's defamatory remarks, and has suffered injury to his reputation that has left him unable to find employment, especially in the small, close-knit industry of imported flowers. *See id.* ¶¶ 48–51.

Based on these allegations, Unker seeks $2,016,000 in compensatory damages from both Marsh and JMI.[5] In addition, Unker

---

4. Whether or not Unker will be able to produce credible evidence at trial to support this allegation is irrelevant at this point in the litigation. "When a federal court reviews the sufficiency of a complaint.... [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is *entitled* to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686 (emphasis added). Thus, for purposes of deciding a motion to dismiss under Rule 12(b)(6), the factual allegations contained in plaintiff's complaint must be accepted as true. *See Dacey v. New York County Lawyer's Ass'n,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); *Merchants Bank of New York v. Credit Suisse Bank,* 585 F.Supp. 304, 311 (S.D.N.Y. 1984).

5. Initially, defendants argued that Unker's complaint failed to state any claim for defamation, since it failed to satisfy the basic pleading requirement that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint." N.Y.C.P.L.R. § 3016(a); *see Chodos v. FBI,* 559 F.Supp. 69, 75 (S.D.N.Y.1982), *aff'd mem.,* 697 F.2d 289 (2d Cir.1982). In this respect, however, Unker's defective pleading has been cured in his amended complaint, which specifically recites five allegedly defamatory remarks by Marsh, *see* Unker AC ¶¶ 41–44.

Defendant Marsh also attacked Unker's first complaint for violating the rule that "punitive damages may not be sought as a separate cause of action." *Weir Metro Ambu-Service, Inc. v. Turner,* 57 N.Y.2d 911, 911, 442 N.E.2d 1268, 456 N.Y.S.2d 757 (1982). Unker once again cured his defective pleadings by amendment, however, and now seeks punitive damages as part of his defamation claim against Marsh. *See* Unker AC ¶ 54.

is suing Marsh for $2,500,000 in punitive damages.

### 1. *Availability of Punitive Damages*

Marsh argues that punitive damages are unavailable as a remedy in a wholly private dispute where no public rights are involved. In support of this proposition, Marsh cites *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976), a case which involved "mere breach of contract," *id.*, 40 N.Y.2d at 358, 353 N.E.2d 793, 386 N.Y.S.2d 831, and which was particularly concerned with "[t]he issue [of] whether an *arbitrator* has the power to award punitive damages." *Id.* at 355, 353 N.E.2d 793, 386 N.Y.S.2d 831 (emphasis added). There is no reason to assume that the New York Court of Appeals, in deciding *Garrity*, intended to eliminate or even diminish the established right of a plaintiff to seek punitive damages for defamation upon a showing of actual malice. *See* 44 NY Jur2d, *Defamation and Privacy* § 137 at 132 (1985); *see also Meehan v. Snow*, 494 F.Supp. 690, 697 (S.D.N.Y.1980), *rev'd on other grounds*, 652 F.2d 274 (2d Cir.1981) (per curiam). Moreover, it cannot be argued that *Garrity* applies because Unker's defamation claims are nothing more than contract claims dressed in tort garments. A fair reading of Unker's amended complaint reveals that his defamation claims allege wrongs independent of those alleged in his claims against JMI for breach of his employment and severance agreements. *Cf. Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (for purposes of New York's longarm statute, a breach of contract will not constitute a tortious act, unless the conduct alleged breaches a legal duty independent of the contract).

■ Marsh also maintains that Unker's allegations of malice are insufficient to permit him to seek punitive damages. Under New York law, punitive damages are recoverable in an action for libel or slander only upon proof that the defendant was motivated by ill will or spite, or by a reckless disregard for the plaintiff's rights. *See Clavenger v. Baker Voorhis & Co.*, 19 A.D.2d 340, 340, 243 N.Y.S.2d 231, 232 (1st Dep't 1963), *aff'd*, 14 N.Y.2d 536, 197 N.E.2d 783, 248 N.Y.S.2d 396 (1964); 44 NY Jur2d, *Defamation and Privacy* § 137 at 132.

■ The attack on the sufficiency of Unker's allegations ignores the principle that the malice necessary to sustain an award of punitive damages may be implied from the publication itself, where the natural inference from the defamatory statement is that it was aimed directly at the plaintiff's reputation. 44 NY Jur2d, *Defamation and Privacy* § 137 at 133; *see Corrigan v. Bobbs-Merrill Co.*, 228 N.Y. 58, 66, 126 N.E. 260, 263 (1920). The statements allegedly made by Marsh regarding Unker appear on their face to constitute an attack on Unker's professional reputation. Although Unker must eventually prove to the trier of fact that such statements were actually made, and although Marsh is free at trial to disprove the inference that his remarks were made with malice, this Court has no sound basis for striking Unker's prayer for punitive damages on a Rule 12(b)(6) motion to dismiss. Moreover, Unker's specific allegation that Marsh's remarks were made "with malice toward the plaintiff or with a reckless disregard for . . . the rights of the plaintiff," Unker AC ¶ 53, may by itself be grounds for this Court to discount defendant's objection to the pleadings. *See Whelehan v. Yazback*, 84 A.D.2d 673, 674, 446 N.Y.S.2d 626, 628 (4th Dep't 1981) ("when malice is required to be pleaded, conclusory allegations of malice have been held sufficient").

### 2. *Liability of Corporate Defendant*

JMI has moved to dismiss the fourth cause of action of Unker's amended complaint in its entirety on the grounds that the complaint makes no more than conclusory allegations that the alleged defamatory remarks were uttered by the defendant Marsh within the scope of his employment with defendant Markovits.

A corporation may be held liable for defamatory utterances made by its officer or agent, acting within the scope of his authority. *National Variety Artists, Inc. v. Mosconi,* 169 Misc. 982, 984, 9 N.Y.S.2d 498, 500 (1939); *see Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 553, 416 N.E.2d 557, 435 N.Y.S.2d 556, 567 (1980) (majority opinion of Judge Jones) ("[a]ll liability of a corporation in defamation necessarily is based on the conduct of some corporate officer, employee or agent"). The question of authority is a factual one. *Mosconi,* 169 Misc. at 984, 9 N.Y.S.2d 498. Here, "[t]here is sufficient averment in the complaint to present that issue of fact." *Id.* Thus, the Court is satisfied that, with regard to his claim against JMI for defendant Marsh's alleged defamatory remarks, Unker has not failed to state a claim upon which relief may be granted.

## II. JMI'S SUIT FOR DEFAULT ON A PROMISSORY NOTE (85–5361)

It is uncontested that Unker executed a promissory note (the "Note") on May 14, 1976 for $12,000 without interest. The Note at issue provides that Unker will pay the amount due "[t]wenty years after date or within one year of leaving the employ of Joseph Markovits, Jr., Inc.." On July 5, 1984, Unker was fired by JMI. JMI asserts that, by its terms, Unker's Note was due on July 5, 1985, and has demanded payment. Unker refuses to pay; he maintains that the Note is not due until 20 years from the date of its issuance, since the phrase "leaving the employ" refers only to a voluntary decision by Unker to leave JMI.

In 85–5361, plaintiff JMI has moved for summary judgment upon the grounds that no triable issues of fact exist with regard to the Note's issuance and defendant Unker's default. *See, e.g., Nutmeg Financial Services, Inc. v. Cowden,* 524 F.Supp. 620, 621 (E.D.N.Y.1981) (holder of promissory note entitled to summary judgment "upon a showing of execution and default"). Unker has cross-moved for summary judgment dismissing the complaint.

JMI argues that the term "leaving the employ" is unambiguous, and clearly includes a fired employee's involuntary act of "leaving" his employment. In response, Unker argues that "leaving" employ refers only to the employee's voluntary termination. In the alternative, Unker argues that summary judgment should not be granted in either party's favor, since the terms of the Note are ambiguous, and a "genuine issue of material fact" exists with regard to contractual intent. *See* Fed.R. Civ.P. 56(c).

Where a contract's language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the contract's meaning. *American Home Products Corp. v. Liberty Mutual Insurance Co.,* 748 F.2d 760, 765 (2d Cir.1984). If, on the other hand, contractual language is susceptible of at least two fairly reasonable interpretations, "summary judgment is perforce improper." *Wards v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir.1985); *see Aetna Casualty & Surety Co. v. Giesow,* 412 F.2d 468, 471 (2d Cir.1969).

Reference to case law supports Unker's position that the "primary meaning[ ] of the word 'leave,' is to quit or depart, implying volition on the part of the person leaving or departing." *Muesling v. International Ry. Co.,* 85 Misc. 309, 311, 147 N.Y.S. 177, 178 (Sup.Ct. Erie Co.1914); *see City of Fort Worth v. L.A. Bostick,* 479 S.W.2d 350, 354 (Tex.Civ.App.1972, writ ref'd n.r.e.) (in cases involving the meaning of the word "leave"—used in the context of an employer-employee relationship and the termination of the employment—courts have uniformly "construed [the word "leave"] to mean a voluntary termination or quitting of the employment"); *but cf. Matter of Kemp & Beatley, Inc.,* 64 N.Y.2d 63, 68, 473 N.E.2d 1173, 484 N.Y.S.2d 799, 802 (1984) (in describing the underlying facts of the case, the Court of Appeals used the phrase "leaving the employ" to refer to individuals who had in fact been terminated by their employer).

Although it is useful to consider the manner in which other courts have dealt with the phrase "leaving the employ" or its cognates, contractual interpretation is an area of law in which precedent should not blindly be applied. If the court finds a particular contractual term to be "beset by ambiguity," then a proper determination of the intent of the parties "require[s] a trial at which a jury or other fact finder [can] clear up the ambiguity by passing on the credibility of the extrinsic evidence and whatever inferences reasonably [can] be drawn therefrom." *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 435 N.E.2d 1075, 1077, 450 N.Y.S.2d 460, 462 (1982). The threshold decision on whether a writing is ambiguous is within the court's exclusive province. *Id; see Thomas v. Price*, 631 F.Supp. 114, 123 n. 9 (S.D.N.Y. 1986).

Whether or not a particular contractual term should be construed as ambiguous depends in part on the nature of the contract at issue—each case is different. In the case at bar, the Court is asked to construe the meaning of a promissory note under the terms of which a valued employee was loaned a substantial amount of money without interest as an inducement to relocate, perhaps as a means of assuring long-term security. *See* Unker AC (85–2022) ¶ 25. It hardly seems obvious that an employer would make this sort of loan knowing that if the employee was fired the next day, he would not have to repay his debt for twenty years.[6] Thus, under the circumstances of this case, the Court finds that "leaving the employ" is not an expression the meaning of which can or should be settled as a matter of law. *See Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985). Accordingly, the cross-motions for summary judgment in 85–5361 must be denied, since a material issue of fact exists concerning the intent of

the contracting parties. *See Wards*, 761 F.2d at 120.

## CONCLUSION

For the reasons stated herein, defendants' several motions to dismiss in 85–2022 for failure to state a claim are denied. Similarly, the parties' cross-motions for summary judgment in 85–5361 are denied.

SO ORDERED.

---

**6.** There are, of course, counter-arguments. For example, it is also doubtful that Unker would have borrowed such an amount, and spent it on his relocation expenses, if he realized that, if he were fired, the entire amount would be due and owing within twelve months. The ability of

both parties to offer sound reasons why their construction of the term "leaving the employ" would have to be the correct one indicates that the term in question is one that "is susceptible of at least two fairly reasonable interpretations." *Aetna Casualty & Surety Co.*, 412 F.2d at 471.