**John GERLACH, Plaintiff,**

v.

**THE HORN & HARDART CO., Defendant.**

**No. 86 Civ. 7358 (RLC).**

United States District Court,
S.D. New York.

March 1, 1988.

---

Stanley S. Getzoff, New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendant; Ronald S. Rauchberg, Bradley I. Ruskin, of counsel.

## OPINION

ROBERT L. CARTER, District Judge:

Plaintiff John Gerlach served as the President and Chief Operating Officer of defendant The Horn & Hardart Company ("Horn & Hardart") from July, 1982, until the last day of October, 1985. The Chairman of Horn & Hardart's Board requested plaintiff's resignation, which was tendered on October 9, 1985. By letter agreement dated October 25, the parties reached an understanding, effective November 1, in settlement of "the salary, benefits and all other arrangements in connection with [plaintiff's] resignation...." Rauchberg Aff't, Ex. A ("the Agreement").

The Agreement, which defendant's general counsel drafted, provided that its terms "are in lieu of all retirement, severance, compensation, bonus, or present or future payments or other benefits to which [plaintiff] may be entitled from [Horn & Hardart]". Among other things, the Agreement disposed of property, including various insurance policies, and reiterated the terms of plaintiff's options to purchase defendant's stock. The Agreement's central term, however, and the one in issue here, reads as follows:

> You will continue to be paid on a monthly basis at the rate of your present salary through April 30, 1986 (Consulting Period). The Company may extend the Consulting Period through July 31, 1986 should you not gain employment prior to May 1, 1986, so long as you have been actively seeking employment during the Consulting Period and you continue to do so during all of the extended period. It will be your responsibility to notify the Company of a change in your status.

Horn & Hardart made the promised monthly payments for the six-month period end-

ing April 30, 1986, but declined to extend those payments for the additional three-month period from May 1 through July 31.

Beginning in January, 1986, plaintiff was instrumental in forming TR Associates, a company that was incorporated in July, 1986, for the purpose of securing franchises to operate Tony Roma's restaurants in Connecticut and parts of New York. During the Consulting Period, plaintiff devoted part of his time to bringing together principal investors, visiting potential restaurant sites, and negotiating with the franchisor.

Plaintiff initiated this diversity action for breach of contract and for a penalty and attorney's fees under Article 6 of New York's Labor Law. Defendant's motion for summary judgment raises three issues: first, whether the Agreement vested in defendant the power to terminate or extend the "Compensation Period" in its sole discretion; second, whether plaintiff was in fact reemployed prior to May 1, 1986; and third, whether the monies allegedly due plaintiff constitute "wages" within the meaning of N.Y.Labor L. § 198.

## DISCUSSION

■ Defendant argues that the plain meaning of the words "[t]he Company *may* extend the Consulting Period ..." is to create a unilateral option in defendant. It is axiomatic, however, that the intent of the parties is to be gleaned from a construction of the contract as a whole, considering individual words in their context. *Weiss v. Weiss*, 52 N.Y.2d 170, 174, 436 N.Y.S.2d 862, 864, 418 N.E.2d 377, 379 (1981); *Seligman v. Mount Ararat Cemetery, Inc.*, 112 A.D.2d 928, 929, 492 N.Y.S.2d 445, 446 (2d Dep't 1985); Jaeger, 4 Williston on Contracts § 601, at 305–08, § 618, at 710–16 (3d ed. 1961 & Supp.1987). The aim of the court is to "arrive at a construction which will give fair meaning to *all* of the language employed by the parties...." *Tantleff v. Truscelli*, 110 A.D.2d 240, 244, 493 N.Y.S.2d 979, 983 (2d Dep't 1985) (emphasis in original), *aff'd*, 69 N.Y.2d 769, 513 N.Y.S.2d 113, 505 N.E.2d 623 (1987).

Taken in context, the phrase that defendant claims confers on it complete discretion is seen to be limited by no fewer than three conditions: it "may extend" the arrangement (i) "should [plaintiff] not gain employment prior to May 1, 1986," (ii) "so long as [plaintiff has] been actively seeking employment during the Consulting Period," and (iii) "so long as ... [plaintiff] continue[s] to do so during all of the extended period." While the verb "may," standing alone, literally confers discretion, to give it that interpretation here would be to render the three precisely drawn clauses annexed to it meaningless. "If literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided." *Outlet Embroidery Co. Inc. v. Derwent Mills, Ltd.*, 254 N.Y. 179, 183, 172 N.E. 462 (1930) (Cardozo, J.).

■ The threshold determination of whether a writing is ambiguous is within the court's exclusive province, *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462, 435 N.E.2d 1075, 1077 (1982), and the court finds patent ambiguity in this one. In the face of ambiguity, recourse to extrinsic evidence is permissible insofar as that evidence tends to clarify the meaning of the language employed by the parties. 4 Williston on Contracts, *supra*, § 629, at 923–925. Furthermore, "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382, 489 N.E.2d 1283, 1284 (1985); 4 Williston on Contracts, *supra*, § 621. *Cf. Reape v. New York News, Inc.*, 122 A.D.2d 29, 504 N.Y.S.2d 469, 470 (2d Dep't 1986) (where non-drafting party's reading of contract provision was so absurd that it would defeat purpose of contract, drafting party's interpretation prevailed). On a motion for summary judgment, "the evidence of the non-movant is to be believed," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), and should that evidence support a reasonable

alternative interpretation of an ambiguous contract, the motion must be denied. *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 10 (2d Cir.1983).

■ Plaintiff has come forward with extrinsic evidence of the intention of the parties at the time of formation which he is entitled to present to a jury. *Sutton,* 55 N.Y.2d at 554, 450 N.Y.S.2d at 462, 435 N.E.2d at 1077. He states that he asked for twelve months' severance pay, Gerlach Aff't, ¶ 4, while defendant offered only nine months. *Id.,* ¶ 5. The nine-month period was agreed to, and defendant's general counsel wrote it into the Agreement as a six-month period followed by a three-month extension period. *Id.* When plaintiff queried the draftsman about the wording employed, he was "advised that the first six months were guaranteed to [him] regardless of whether [he] became re-employed during the period," while "the next three months would be paid to [him] providing [he] continued to be unemployed and actively seeking employment." *Id.*

■ Defendant nonetheless contends that, even if it promised to extend the compensation period for an additional three months in the event that plaintiff should have failed to "gain employment" prior to May 1, the condition of its promise did not in fact obtain. Before addressing the factual basis of defendant's argument, the court must determine the intent of the parties in using the words "gain employment." The words of a contract are to be given their ordinary sense, *Carpenter v. Machold,* 86 A.D.2d 727, 447 N.Y.S.2d 46, 47 (3d Dep't 1982), unless to do so would frustrate the purposes of the parties. 4

Williston on Contracts, *supra,* § 618, at 705–07.

Defendant proposes that a line of cases construing New York's Unemployment Insurance Law, N.Y.Labor L. §§ 500–643, be deemed applicable on the question of contractual intent. That statute, however, requires that claimants for benefits be *"totally* unemployed," N.Y.Labor L. §§ 522, 590(1), begging the question at hand. "Although it is useful to consider the manner in which other courts have dealt with the phrase ..., contractual interpretation is an area of law in which precedent should not be blindly applied." *Unker v. Joseph Markovits, Inc.,* 643 F.Supp. 1043, 1050 (S.D.N.Y.1986) (Leisure, J.).

The express purpose of the Agreement was to create a package of "salary, benefits and ... other arrangements" that would stand in place of whatever separation package plaintiff would otherwise have received.[1] Giving the words "gain employment" their ordinary sense, while doing justice to the reasonable expectations of the parties at the time of formation, the court concludes that remuneration, and indeed substantial remuneration, was intended to be encompassed within the concept of "gaining employment." Plaintiff's monthly stipend under the Agreement was $25,000. It is too absurd to believe that the gaining of non-remunerative "employment" could have been intended by the parties to trigger the cessation of severance pay under this Agreement. This is particularly clear in view of the fact that plaintiff served on the Boards of Directors of seven corporations at the time of formation, in return for which he "receive[d] more than honorarium." Gerlach Aff't, ¶ 8.

---

1. Defendant argues that the purpose of the Agreement was to create a consulting arrangement. While the Agreement requires plaintiff to "make [himself] reasonably available to [defendant] for consultation purposes during the Consulting Period and any extension," it appears that the primary purpose of the consulting arrangement was to make clear that plaintiff, not defendant, would "be responsible for all taxes on [the] compensation" he received under the Agreement. *See also* Depo. of Gerlach at 166. It does not appear from the record that

defendant ever actually requested consulting services of plaintiff during the "Consulting Period," *see* Plaintiff's Counterstatement Pursuant to Local Civil Rule 3(g), ¶¶ 6–7, a fact which is probative of the parties' intentions at the time of formation. 4 Williston on Contracts, *supra,* § 623.

In any event, the court fails to appreciate how the inclusion of consulting obligations in this Agreement alters its express purpose of providing severance compensation.

■ Turning now to the factual basis for the motion, defendant concedes that plaintiff has never received compensation from TR Associates.[2] Defendant's Br. at 10. Nor does defendant challenge plaintiff's evidence that he actively searched for employment during the Consulting Period and subsequently. Gerlach Aff't, unnumbered exhibits following Ex. 3. Plaintiff ultimately gained employment in mid-July, 1986, with Bear Stearns & Co. Plaintiff's Counterstatement pursuant to Local Civil Rule 3(g), ¶ 11. Since defendant has failed to carry its initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), its motion is denied.

■ Plaintiff's statutory claims arise under Section 198 (1–a) of the New York Labor Law, which provides that

> [i]n any action instituted upon a wage claim by an employee ... in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

Defendant asserts that any compensation it may owe plaintiff under the Agreement does not constitute "wages" within the meaning of this provision. Labor Law § 190(1), however, states in relevant part that "benefits or wage supplements as defined in section [198–c] of this article" come within the compass of the term "wages," and section 198–c(2), in turn, defines the term "benefits or wage supplements" to include retirement benefits and separation pay. Since the express purpose of the Agreement was to provide plaintiff with "salary, benefits and other ... arrangements in connection with [his] resignation," it follows that any benefits owing under its terms are wages within the meaning of Article 6 of the Labor Law.

It follows, as well, that plaintiff is an "employee" entitled to the protection of that statute. *Horn & Hardart Co. v. Ross*, 58 A.D.2d 518, 395 N.Y.S.2d 180, 181 (1st Dep't), *appeal dismissed*, 42 N.Y.2d 1060, 399 N.Y.S.2d 216, 369 N.E.2d 772 (1977). In a closer case than this one, a lower State court looked to whether the employer "was responsible for its share of" the applicable taxes in order to determine whether the plaintiff was an employee or an independent contractor. *Guepet v. Int'l Tao Systems, Inc.*, 110 Misc.2d 940, 941, 443 N.Y.S.2d 321, 322 (Sup.Ct. Nassau Cty.1981). Here, of course, plaintiff was solely responsible for all taxes. Nonetheless, in view of the plain purpose of the Agreement here, this case falls squarely under the doctrine of *Horn & Hardart Co. v. Ross, supra*.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied in all respects. The case will proceed to trial in its turn.

IT IS SO ORDERED.

---

2. Plaintiff's expenses, in the amount of $4,503.92, were, however, reimbursed.