◼ SUMITOMO BANK OF NEW YORK TRUST COMPANY, Respondent, v TOWN OF NORTH HEMPSTEAD et al., Defendants, and TOWN OF BABYLON, Appellant. [689 NYS2d 525] —In an action, *inter alia,* to recover damages for breach of contract, the defendant Town of Babylon appeals from so much of an order of the Supreme Court, Nassau County (Kohn, J.), entered December 1, 1997, as denied that branch of its motion which was for summary judgment dismissing the first and fifth causes of action insofar as asserted against it.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, that branch of the motion which was to dismiss the first and fifth causes of action is granted, the complaint is dismissed insofar as asserted against the appellant, and the action against the remaining defendants is severed.

At issue on this appeal is the viability of the plaintiff's first

cause of action (breach of a consent agreement) and fifth cause of action (breach of an intermunicipal contract) insofar as they are asserted against the appellant Town of Babylon. All other causes of action against the appellant have either been withdrawn or dismissed.

According to the terms of various intermunicipal agreements entered into by the defendants in 1992, the Town of Babylon (hereinafter Babylon) was to process solid waste generated by the Town of North Hempstead (hereinafter North Hempstead) until the latter, through the Town of North Hempstead Solid Waste Management Authority (hereinafter the Authority), could modify and improve its waste transfer station to comply with the requirements of Department of Environmental Conservation. Pursuant to a separate operation agreement, a private start-up company, North Hempstead Resources, Inc. (hereinafter NHRI), contracted to redesign and operate the North Hempstead Transfer Station. NHRI sought funding in the private bond market, and on November 3, 1992, entered into a trust indenture agreement with the plaintiff Sumitomo Bank of New York Trust Company (hereinafter Sumitomo) for nearly $17 million in 20-year notes at 11% interest. As security for its debt, NHRI pledged its rights and revenues to Sumitomo.

As part of the NHRI arrangement with Sumitomo, the municipal defendants entered into a consent agreement with Sumitomo. Insofar as is pertinent to this appeal, pursuant to the consent agreement Babylon acquiesced in the pledge by NHRI, and agreed not to amend certain terms of its own contractual arrangements with the other defendants and with NHRI without the prior written consent of Sumitomo, if such amendment would "adversely affect" the ability of the Authority to make certain concession surcharge payments to NHRI, and it further agreed not to take any action in violation of the agreements which would affect the ability of NHRI to make payments to Sumitomo. In or around December 1993 NHRI defaulted on its obligation to Sumitomo, and it has apparently filed for bankruptcy protection.

Under the plain language of the consent agreement, Babylon would be liable to Sumitomo if any departure by Babylon from its agreements with Sumitomo, the North Hempstead defendants, and/or NHRI, caused NHRI to default in its payments to Sumitomo or caused the Authority to be unable to make its payments to NHRI. The principal theory asserted by Sumitomo against Babylon in the instant action is that Babylon, without notice to Sumitomo, either proposed or acquiesced in

alterations in the design of the transfer station which made the project more time-consuming and expensive than originally conceived, thereby allegedly causing NHRI to default and the Authority to become delinquent in its obligations. However, Babylon established that it had no power under the contracts at issue here to approve or reject any design modifications, which rights were reserved to the North Hempstead defendants alone. Accordingly, Babylon's purported approval of or acquiescence in a matter that it had no power to control is meaningless and could not have constituted a default (*see, e.g., Corning Glass Works v Southern New England Tel. Co.,* 674 F Supp 999, 1013, *affd* 835 F2d 451; *Rothschild v Title Guar. & Trust Co.,* 204 NY 458, 464; *see also, Humboldt Livestock Auction v B&H Cattle Co.,* 261 Iowa 419, 432, 155 NW2d 478; *Schmitt v Wright,* 317 Ill App 384, 46 NE2d 184).

In addition, it is clear that the contracts at issue here anticipated that the original Transfer Station design would be modified (*see, e.g., Sutton v East Riv. Sav. Bank,* 55 NY2d 550). Accordingly, Babylon could not have defaulted by failing to alert Sumitomo that a proposed design change, which on its face was sanctioned by the underlying agreements, might in the long run have an adverse effect on the ability of NHRI and/or the Authority to discharge their obligations (*see, e.g., Lui v Park Ridge,* 196 AD2d 579).

Contrary to the interpretation of Sumitomo, nothing in the plain language of the contracts sued upon obliged Babylon to meet once a month with NHRI, or required Babylon to cause NHRI to correct its performance defaults, or compelled Babylon to communicate directly with NHRI or Sumitomo regarding the performance of NHRI (*see, e.g., Namad v Salomon Inc.,* 74 NY2d 751; *Chimart Assocs. v Paul,* 66 NY2d 570, 572; *Automotive Mgt. Group v SRB Mgt. Co.,* 239 AD2d 450; *Hay Group Inv. Holding v Saatchi & Saatchi Co.,* 223 AD2d 458; *Marine Assocs. v New Suffolk Dev. Corp.,* 125 AD2d 649, 652). Moreover, Babylon was contractually entitled to bill the Authority for transport and disposal services rendered, and its doing so could not have constituted a breach of the consent agreement.

Since Babylon therefore could not be found liable to Sumitomo under the theories advanced in the first and fifth causes of action, it was entitled to summary judgment dismissing the complaint insofar as asserted against it (*see, e.g., Hay Group Inv. Holding v Saatchi & Saatchi Co., supra*). Ritter, J. P., Altman, Friedmann and Goldstein, JJ., concur.