■ MARY GRANDY, Respondent, v JAMES A. MCKAY et al., Appellants. (Action No. 1.) FRANCES I. SINDLINGER, Respondent, v JAMES A. MCKAY et al., Appellants. (Action No. 2.) [918 NYS2d 810]—

Rose, J.

The parties own adjoining parcels of property near Kinderhook Lake in the Town of Chatham, Columbia County. Plaintiff Frances I. Sindlinger possesses a 25-foot-wide right-of-way over defendants' property extending from Eberle Road to the westerly portion of her landlocked property and continuing to Kinderhook Lake. Plaintiff Mary Grandy has access to her property over Eberle Road Extension, but has used the right-of-way for ingress and egress to her property and Kinderhook Lake. In 2006, plaintiffs commenced these actions seeking, among other things, to enjoin defendants from interfering with their use of the right-of-way. The parties thereafter entered into an oral stipulation of settlement on the record in open court. The stipulation provided that Sindlinger would retain her right to unobstructed use of the right-of-way for ingress and egress from Eberle Road to Kinderhook Lake, and granted Grandy free access over the right-of-way for limited, specified purposes. The stipulation also detailed various other rights and restrictions of the parties pertaining to the right-of-way.

Thereafter, the parties attempted to memorialize the terms of the stipulation, but defendants refused to sign plaintiffs' proposed written version of the agreement due to a dispute over

defendants' contention that the stipulation permitted them to erect a fence along the perimeter of the right-of-way bordering the property of Sindlinger and Grandy, as well as Sindlinger's right to extend her gravel driveway within the right-of-way. Plaintiffs subsequently moved for, among other things, an order enforcing the stipulation and compelling defendants to execute the agreements prepared by them. Supreme Court granted the motion in part and directed defendants to execute the agreements prepared by plaintiffs. Defendants appeal and we affirm.

A stipulation of settlement entered into in open court is a contract subject to the principles of contract interpretation (*see Bell v White*, 77 AD3d 1241, 1242 [2010]; *Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 46 AD3d 1251, 1253 [2007]; *Serna v Pergament Distribs.*, 182 AD2d 985, 986 [1992], *lv dismissed* 80 NY2d 893 [1992]). The fundamental objective when interpreting a contract is to determine the intent of the parties as derived from the language employed (*see Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1, 9 [1997]; *Cerand v Burstein*, 72 AD3d 1262, 1265 [2010]), and "where the parties have agreed to conduct themselves in accordance with the rights and duties expressed [therein], a court should strive to give a fair and reasonable meaning to the language used" (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d at 9-10; *see Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 555 [1982]; *AXA Global Risks U.S. Ins. Co. v Sweet Assoc.*, 302 AD2d 844, 846 [2003]).

In our view, the provision of the stipulation whereby defendants are allowed to fence their property "as long as it does not interfere with the right-of-way or anyone's access to their property" should not be construed so as to allow defendants to limit plaintiffs' access. Rather, defendants' right to fence their property is subject to plaintiffs' right to freely access their properties as permitted by the terms of their stipulation (*see e.g. Gisondi v Nyack Mews Condominium*, 251 AD2d 371, 372 [1998]). The record reveals that, due to the location of various structures and the topography of Grandy's property, placement of defendants' proposed solid vinyl fence along her northerly boundary, even with a proposed 20-foot gate, would interfere with her license to access her northerly boundary and her lakeside front yard for lawn mowing, gardening and other routine maintenance to her property and improvements, yet that was an express purpose of the stipulation. It is clear from photographs in the record and Grandy's affidavit of October 30, 2009 that the proposed fence will deprive her of that access, and the proposed gate will not remedy the problem. Plaintiffs bargained

for access to their property in exchange for their relinquishment of their interest in another right-of-way elsewhere on defendants' property. Inasmuch as a contract should be " 'interpreted [so] as to give effect to its general purpose' " (*Beal Sav. Bank v Sommer*, 8 NY3d 318, 324-325 [2007], quoting *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]), plaintiffs' right of unobstructed access along their boundaries with the right-of-way, as described in their stipulation, should be given effect.

Next addressing the provision of the stipulation concerning Sindlinger's right to extend that portion of her driveway located within the right-of-way, we find no ambiguity. As acknowledged by the parties during the stipulation and reflected in a survey, a portion of Sindlinger's gravel driveway runs parallel to her property and is located within the right-of-way. The stipulation provides, in no uncertain terms, that Sindlinger may extend her current driveway, by gravel, to the westerly border of her property but no further. The parties agreed that, beyond that point, the property will remain in its current condition. Thus, Supreme Court correctly interpreted the stipulation as permitting an extension of Sindlinger's gravel driveway on the right-of-way, but only to the westerly boundary of her property.

Lahtinen and Kavanagh, JJ., concur.

Peters, J.P. (dissenting). We respectfully dissent. The stipulation as placed on the record recited that no structures or encumbrances were to be installed on the right-of-way and that the parties shall have free access over it. It then went on to state, however, that "the parties have the right to fence their properties as long as [the fencing] does not interfere with the right-of-way or anyone's access to their property." The majority acknowledges defendants' right under the stipulation to fence in their property, including the right-of-way, but claims that such right is subject to plaintiff Mary Grandy's right to freely access the northern boundary of her property anywhere along the right-of-way. However, that is not what the parties bargained for in the stipulation.

In reiterating the terms of the stipulation as it pertained to Grandy, the Hearing Officer confirmed—and Grandy affirmed her understanding and agreement—that the stipulation granted Grandy "an easement for ingress and egress from Eberle Road to the *corner of [her] property*, and a license thereafter . . . from the *corner* to the lake" (emphasis added). Indeed, the proposed easement and license agreements submitted by *Grandy*—which purport to memorialize the terms of the stipulation—recite that the stipulation granted her an easement and irrevocable license

"over a 25 foot wide [right-of-way] leading from Eberle Road to the *northeasterly corner* of the property" for the limited purposes of routine and nonroutine maintenance (emphasis added). Thus, contrary to the majority's conclusion, and consistent with Grandy's understanding as reflected in her proposed agreements, the stipulation only provided her access from the right-of-way to the northeast corner of her property—which is where defendants' proposed 20-foot gate would be located.* Such a gate does not interfere with Grandy's "access to [her] property," as that access is defined in the stipulation.

We fail to find any record support for the majority's finding that defendants' proposed fence with a 20-foot gate at the northeast corner of Grandy's property would interfere with the ability to access portions of her property for the purposes stated in the stipulation. In this regard, it must be noted that Grandy has access to her property over Eberle Road Extension and, except for the limited purposes set forth in the stipulation, this remains her exclusive means of ingress to and egress from her property. The purpose of the stipulation was to provide access to that northerly portion of Grandy's property that was, due to the topography of her property, inaccessible via the Eberle Road Extension access point—which is located on the southern boundary of her property. The entrance point from the right-of-way to the northeast corner of her property serves this purpose and accommodates such access, and there is nothing in the survey maps or photographs of the property to indicate otherwise. Indeed, in her affidavit before Supreme Court, Grandy only objected to the placement of a fence within the confines of the right-of-way (an assertion that the majority rejects) and the erection of a 12-foot-wide gate—as opposed to the 20-foot-wide entranceway that currently exists (which defendants thereafter agreed to provide). She made no assertion that access to the entirety of her northerly boundary from the right-of-way was necessary for the limited purposes specified in the stipulation.

Accordingly, we would modify Supreme Court's order by reversing so much thereof as found that defendants cannot erect a fence along the perimeter of the right-of-way adjoining plaintiffs' boundaries and as directed defendants to execute the agreements prepared by plaintiffs.

Egan Jr., J., concurs. Ordered that the order is affirmed, with costs.

---

* Defendants attested in their affidavits before Supreme Court, and conceded at oral argument before this Court, that they would agree to install a 20-foot gate with a removable post in the event that they decide to erect a fence on the perimeter of the right-of-way bordering Grandy's property.