**CHRYSLER CAPITAL CORPORATION,**
Plaintiff,

v.

**BANKERS TRUST COMPANY,**
Defendant.

**No. 91 Civ. 5090 (RLC).**

United States District Court,
S.D. New York.

Nov. 10, 1992.

Kornstein, Veisz & Wexler, New York City (Howard S. Veisz, of counsel), for plaintiff.

White & Case, New York City (Laura B. Hoguet, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, Senior District Judge.

Plaintiff Chrysler Capital Corporation ("Chrysler") seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 construing a loan participation agreement that it entered into with defendant Bankers Trust Company ("Bankers Trust"). Chrysler now moves for summary judgment pursuant to Rule 56, F.R.Civ.P. Bankers Trust opposes Chrysler's motion and cross-moves for summary judgment.

I.

Plaintiff Chrysler is a Delaware corporation with its principal place of business in Connecticut. Defendant Bankers Trust is a New York corporation with its principal place of business in New York.

In July 1990, Chrysler entered into a Loan and Security Agreement with Henry I. Siegel Company, Inc. ("HIS"), providing for a $120 million loan. The loan is structured as a $30 million senior term loan, a $30 million subordinated term loan, and a $60 million revolving credit facility. Chrysler conditioned its loan to HIS on the participation of other lenders.

With respect to the $60 million revolving credit facility, Chrysler put up half the funds, Whirlpool Financial Corporation committed $20 million, and National Westminster Bank U.S.A. pledged up to $2.5 million. Bankers Trust agreed to provide the remaining $7.5 million pursuant to a Participation Agreement with Chrysler.

The Participation Agreement between Chrysler and Bankers Trust defines the parties' rights and obligations with respect to three categories of revolving loan proceeds: "Advances," "overadvances," and "CC Overadvances." An "Advance" is a loan made for HIS's general operating expenses for an amount that falls within the lending limits described in Chrysler's Loan and Security Agreement with HIS. An "overadvance" is an Advance that exceeds the lending limits described in the Loan and Security Agreement. A "CC Overadvance" is an Advance made at the discretion of Chrysler for the purpose of enabling HIS to make a payment of principal, interest or other amounts owed to Chrysler on the subordinated debt component of the $120 million loan. Bankers Trust is obligated to purchase 18.75% of the principal amount of each Advance and overadvance made by Chrysler to HIS up to a total of $7.5 million; however, it is under no obligation to purchase a participating share of any CC Overadvance made by Chrysler to HIS.[1]

Between January and March of 1991, the parties dispute the actual date, Chrysler made a CC Overadvance for the first time. The CC Overadvance is still outstanding.

The parties contest the meaning of a phrase in Section 8(b) of the Participation Agreement dealing with the parties' rights and obligations when a CC Overadvance is outstanding. At issue is the meaning of the following phrase "Participant shall have no further obligations to purchase additional participations hereunder". Bankers Trust has interpreted this phrase to mean that once a CC Overadvance has occurred, Bankers Trust is excused from its obligation to purchase its specified share (18.75%) of any new Advances and overadvances made pursuant to the revolving credit facility until the conditions giving rise to the CC Overadvance are cured.

Based on its interpretation of the phrase, Bankers Trust has refused to participate in any new Advances or overadvances made by Chrysler to Siegel since about April 1991. Chrysler contends that Bankers Trust's refusal has caused Chrysler, as of July 12, 1991, to place $1,285,000 of its own funds at risk which should have been provided by Bankers Trust.

Chrysler has moved for summary judgment seeking a declaratory judgment that the phrase in Section 8(b) applies only to CC Overadvances, not to Advances or overadvances made by Chrysler under the revolving note. Bankers Trust opposes

---

**1.** Section 1 of the Participation Agreement, which outlines Bankers Trust's obligations with respect to Advances, provides as follows: "Chrysler hereby sells and Participant hereby purchases without recourse on a continuing basis an undivided participation and interest in the Advances at any time outstanding, on the terms and conditions set forth herein, in a percentage (the "Participation Percentage") of the principal amount thereof equal to (18.75%) of the principal amount of the Advances outstanding at such time which for purposes of Advances comprising the Letter of Credit Reimbursement Guarantees, shall mean (18.75%) of the aggregate amount of Letter of Credit Reimbursement Guarantees outstanding at such time, ... *provided, however,* in no event (including the occurrence of overadvances pursuant to Paragraph 7 hereof) shall the amount of Participant's participation in the Advances exceed $7,500,000 (the *"Participation Limit"*) ...." (emphasis in original).

Section 7 which outlines Bankers Trust's commitment to participate in overadvances states: "Chrysler may permit the Advances at any time to exceed the amount which would otherwise be permitted in accordance with clause (ii) of the definition of Availability by not more than $9,000,000 at any time provided, that in any event the amount of Advances made by Chrysler shall not exceed $40,000,000 at any time outstanding, *provided however,* that Participant shall not be obligated to purchase a participating share of any CC Overadvance (as such term is defined in Paragraph 8(b) hereof) and the overadvances in the amount of $9,000,000 referred to in this sentence shall be overadvances made by Chrysler exclusive of the amount of any such CC Overadvance."

*See infra* note 4 for the first paragraph Section 8(b) which states that Bankers Trust is not obligated to purchase a share of CC Overadvances.

Chrysler's motion for summary judgment, and cross-moves for summary judgment on the ground that the operative language in Section 8(b) unambiguously excuses Bankers Trust from participating in any further Advances under the Agreement, whether they be Advances, Overadvances or CC Overadvances, for as long as the conditions giving rise to the CC Overadvances remain uncured.

Section 14 of the Participation Agreement provides that the Agreement shall be governed by the laws of the State of New York.

## II.

▮ To decide a summary judgment motion in a dispute over the meaning of contract language, the court must first determine as a matter of law whether the terms of the contract are "sufficiently ambiguous to permit any proof concerning the subjective intent of the parties." *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980); *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 435 N.E.2d 1075 (1982). If the contract language is "unambiguous," the court must enforce the plain, ordinary, and common meaning of those terms as a matter of law without reference to extrinsic evidence.[2] *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989); *see also IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc.*, 590 F.Supp. 769, 772 (S.D.N.Y.1984) (Weinfeld, J.). Both parties agree in their respective summary judgment motions that

the phrase "Participant shall have no further obligations to purchase additional participations hereunder" is "unambiguous," yet the parties offer conflicting interpretations of the allegedly unambiguous language.

However, the phrase is not "ambiguous" simply because Bankers Trust and Chrysler disagree as to its meaning. As the Second Circuit has cautioned:

"Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would 'strain[ ] the contract language beyond its reasonable and ordinary meaning.' " *Hunt*, 889 F.2d at 1277 (quoting *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)).

The Second Circuit has also noted that "it is the rare sentence that cannot be read in more than one way if the reader is willing either to suspend the rules of common English usage or ignore the conventions of a given commercial setting.... Contorted semanticism must not be permitted to create an issue where none exists." *Wards Co., Inc. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985).

▮ In order to determine whether the phrase in Section 8(b) of the Participation Agreement is "ambiguous," it is necessary to consider it in the context of the entire Participation Agreement, including the other language in that subsection. The phrase is ambiguous only if it is "capable of more

---

**2.** If the phrase in the Participation Agreement is found to be "ambiguous," summary judgment may still be appropriate, but there is a second step in which extrinsic evidence of the parties' intent at the time of contracting is considered. At this stage, summary judgment is improper if the opposing party proffers a reasonable interpretation of the contract language, and submits supporting extrinsic evidence over which there is a genuine dispute. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983). Should an examination of the extrinsic evidence become necessary to resolving this dispute, Chrysler contends summary judgment must be granted in its favor because the extrinsic evidence submitted in support of the parties' summary judg-

ment motions reveals a "total lack of evidentiary support for Bankers Trust's interpretation." Chrysler's Memorandum at 32. However, Bankers Trust argues that should the court determine that it is necessary to consider the parties' extrinsic evidence, summary judgment cannot be granted because the evidence submitted on the parties' intent is in conflict. In the present case, a determination can be made without examining the parties' extrinsic evidence. However, had resort to the parties extrinsic evidence been necessary, both Chrysler and Bankers Trust's summary judgment motions would have to be denied. Bankers Trust is correct that the evidence on the parties' intent presents an issue of factual dispute.

than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987) (citations omitted).

The first paragraph of Section 8(b) defines the concept of a CC Overadvance and makes clear that Bankers Trust as the Participant[3] has no obligation to purchase a participating share of the CC Overadvance.[4] The second paragraph of Section 8(b) reads:

In addition, Chrysler agrees that so long as (x) the sum of the amount of outstanding Advances (not including any such CC Overadvances) plus any such CC Overadvances is in excess of an amount equal to Availability at such time less $3,000,000, or (y) all Events of Default and Subordination which gave rise to the CC Overadvance as set forth in the preceding paragraph shall not have been cured ..., then (i) prior to any payment on account of the principal amount of any CC Overadvances, the Participant shall have received repayment of Participant's participating share hereunder from Current Asset Collateral and *Participant shall have no further obligations to purchase additional participations hereunder,* (ii) Chrysler shall be entitled to receive interest on the CC Overadvance on a current basis and on account of past due unpaid interest if

Borrower has paid interest on all Advances under the Loan and Security Agreement, (iii).... At such time as Availability minus $3,000,000 is an amount equal to or greater than the amount of all outstanding Advances (which shall include the CC Overadvance), and all Events of Default and Subordination Events which gave rise to the CC Overadvance have been cured (a waiver not being a cure for purposes hereof), then the CC Overadvance shall be and be deemed to be repaid in full and shall thereupon constitute an Advance in which Participant shall purchase a participating share hereunder. (Emphasis added).

Since the first paragraph of Section 8(b) already excuses Bankers Trust, as the Participant, from any obligation to purchase a participating share of a CC Overadvance, to read the highlighted phrase in the second paragraph of Section 8(b) as excusing Bankers Trust's obligation to purchase a share of additional CC Overadvances would render the second paragraph redundant. *See Morgan, Olmstead, Kennedy & Gardner, Inc. v. Federal Ins. Co.,* 637 F.Supp. 973, 977 (S.D.N.Y.) (Conner, J.), *aff'd,* 833 F.2d 1003 (2d Cir.1986) (finding contract language "unambiguous" in part based on "fundamental" principle that contract should be construed so as to give meaning to each of its terms). In addition, the phrase would make no sense if it was meant to excuse Bankers Trust from purchasing additional CC Overadvances when by virtue of the first paragraph of Section

---

**3.** The opening paragraph of the Participation Agreement indicates that throughout the Agreement Chrysler is referred to as "Chrysler," and Bankers Trust is referred to as "Participant".

**4.** The first paragraph of Section 8(b) reads: "If (x) prior to the date on which all Senior Term Loans have been paid in full, (I) an Event of Default under Section 8.01(a)(i) of the Loan and Security Agreement ... or (II) an Event of Default by reason of the breach of Section 6.15 or 6.17 of the Loan and Security Agreement ... has occurred and is continuing ... and in the case of clause (II) at such time Availability is $3,000,000 or less or (y) on and after the date on which all Senior Term Loans have been paid in full, (I) any Event of Default under Section

8.01(a)(i) of the Loan and Security Agreement ... or (II) any other Event of Default or any Subordination Event ... has occurred and is continuing ... and in the case of immediately preceding clause (II) at such time as Availability is $3,000,000 or less, and the Borrower requests that an Advance be made in order to make a payment of principal, interest or other amounts owing on [Chrysler's] Subordinated Loan ... and Chrysler, in its discretion, chooses to make an Advance for the purpose of making payment of such principal, interest or other amounts owing on the Subordinated Loan (a "CC Overadvance"), *the Participant shall be under no obligation to purchase a participating share of such CC Overadvance."* (Emphasis added).

8(b) Bankers Trust is not obligated to purchase a share of *any* CC Overadvance.[5] Certainly, in the phrase "Participant shall have no further obligations to purchase additional participations" the term "participations" must at least refer to something in which Bankers Trust participates. By virtue of the first paragraph of Section 8(b) Bankers Trust is not "participating" in the extension of CC Overadvances to HIS, and by virtue of the last sentence of the second paragraph of Section 8(b) Bankers Trust does not "participate" by purchasing a percentage of the CC Overadvance until it converts into an Advance.

Bankers Trust is, however, required to "participate" in Advances and overadvances by purchasing a participating share, specifically 18.75%, of each Advance or overadvance.[6] The word "participation" is used in other parts of the Participation Agreement to refer to a purchase by Bankers Trust of a share of an Advance. For example, Section 10(a) twice refers to "Advances in which Participant is purchasing a *participation* hereunder," and Section 1 states "Participant hereby purchases without recourse on a continuing basis an undivided *participation* and interest in the Advances at any time outstanding."[7] (Emphasis added). Thus, with each Advance Bankers Trust has purchased a "participation," and "participations" as used in the phrase in Section 8(b) refers to a cumulation of purchases Bankers Trust has made when several Advances have been extended.

For the foregoing reasons, the phrase "Participant shall have no further obligations to purchase additional participations hereunder" is unambiguous. The phrase means that so long as the conditions listed in the first half of the sentence in which the phrase is contained remain uncured, Bankers Trust has no obligations to purchase a percentage of Advances or overadvances made subsequent to the CC Overadvance.

This clear meaning does not conflict with other provisions of the Agreement. Chrysler contends that portions of the Agreement, stating that Bankers Trust's obligation to participate in Advances is "absolute and unconditional," prove that the phrase in Section 8(b) cannot possibly relieve Bankers Trust of its obligation to purchase its required share of new Advances. However, Chrysler ignores some important language which indicates that Bankers Trust's absolute promise to participate is subject to many provisions of the Agreement which excuse or limit the degree of Bankers Trust's commitment. For example, although Section 1 states that Bankers Trust agrees to purchase "without recourse" on a continuing basis an undivided participation and interest in the Advances, in the same sentence the Agreement states that Bankers Trust's promise is subject to "the terms and conditions set forth herein".[8]

---

**5.** Section 7 of the Agreement also suggests that the phrase at issue would make no sense if it were intended to excuse Bankers Trust from purchasing shares in "additional" CC Overadvances because Bankers Trust is already excused from purchasing any CC Overadvances whatsoever. Section 7 states, "Participant shall not be obligated to purchase a participating share of any CC Overadvance (as such term is defined in Paragraph 8(b) hereof)...."

**6.** *See supra* note 1.

**7.** *See also* Section 2 which states "Participant's participating share hereunder shall constitute an undivided interest in the Advances to the extent of Participant's *participation*," and Section 3(b) refers to Participant's obligation to "purchase this *participation*". (Emphasis added).

**8.** *See also* Section 9 which states that "[t]he obligation of Participant to make payments to

Chrysler, and of Chrysler to make payments to Participant, *in accordance with the provisions of this agreement,* shall be *absolute and unconditional.*" (Emphasis added). The "provisions" of the Agreement, of course, include the provisions of Section 8(b).

Chrysler places particular weight on Section 3(b) which states: "Participant hereby *absolutely and unconditionally* agrees to pay to Chrysler on each applicable Settlement Date, in immediately available funds, Participant's Participation Percentage of the amount of payments actually made by Chrysler pursuant to each Letter of Credit Reimbursement Guarantee (which share shall be 18.75% thereof, subject to the Participation Limit), *pursuant to the procedure described in Paragraph 3(c) hereof.* Participant acknowledges and agrees that its obligation to purchase this participation is *absolute and unconditional,* and shall not be affected by any circumstance whatsoever, including, without

Finally, Chrysler's argument that if the phrase means what Bankers Trust contends, the concept would be too important to have been "buried" in the middle of the paragraph must be rejected. The law does not require parties to highlight particularly important language, and entities like Chrysler and Bankers Trust which are large financial institutions should be deemed to have read every word of their contract.

Chrysler's motion for summary judgment is denied. Bankers Trust's motion for summary judgment is granted.

IT IS SO ORDERED.

limitation, the occurrence of any Event of Default under the Loan and Security Agreement...." (Emphasis added). However, this Participation Percentage cannot include loans in which Bankers Trust is not required to participate. For example, it does not include CC Overadvances, loans that would require Bankers Trust to participate beyond the Participation Limit, nor does it include any Advance made while a CC Overadvance is outstanding and the conditions described in Section 8(b) remain uncured.